# United States Court of Appeals
## For the First Circuit

No. 00-1053

GERARD P. DUNN, INDIVIDUALLY
AND ON BEHALF OF THOMAS M. DUNN,

Plaintiff, Appellant,

v.

ARIANE K. COMETA, M.D.,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

Before

Selya, Circuit Judge,

Cyr, Senior Circuit Judge,

and Boudin, Circuit Judge.

David J. Van Dyke with whom Berman & Simmons, P.A. was on brief for appellant.
Anne M. Carney with whom Norman, Hanson & DeTroy, LLC was on brief for appellee.

January 26, 2001

BOUDIN, Circuit Judge. This case involves claims brought by Thomas Dunn's father, on behalf of himself and Thomas Dunn, and against Thomas Dunn's former wife, Ariane Cometa. The claims were dismissed: some under the domestic relations exception to federal court jurisdiction, Ankenbrandt v. Richards, 504 U.S. 689, 703 (1992); others based on Burford abstention, Burford v. Sun Oil Co., 319 U.S. 315, 334 (1943); and the remainder because they failed to meet the amount-in-controversy requirement for diversity jurisdiction, 28 U.S.C. § 1332(a) (Supp. II 1996). The facts that bear on the dismissal (by contrast to the merits) are undisputed and can be briefly summarized.

Cometa and Dunn married in June 1989, Cometa then being enrolled in medical school. In September 1994, while Cometa was doing her residency at a hospital in Maine, Dunn suffered a catastrophic brain injury. Semi-comatose for the first six months after the injury, he could not speak for 18 months and continues to be severely disabled. From September 1994 to June 1997, he lived in various medical or extended care facilities in Maine. In June 1997, Dunn's father took him to Georgia to live and in August 1997, his father was named Dunn's conservator by a court in Maine.

After the accident and until mid-1997, Cometa managed the family's affairs and Dunn's care and location. In January 1995, she began a liaison with another man, and in April 1997, she petitioned a Maine district court for a divorce from Dunn which was granted in December 1998. This proceeding ended with a property division and an order that Cometa pay alimony to Dunn for five years based on ability to pay, employment potential, and Dunn's disability. In the course of the proceeding, Dunn's counsel conducted limited discovery to support charges that Cometa had wrongly allowed Dunn's private health insurance to lapse and had wrongly transferred marital and non-marital assets to herself, but the claims were not pressed in the case and did not affect the division of property or alimony.

However, in the course of awarding attorney's fees, the judge in the divorce case declined to award Dunn all the fees that he requested, partly because the judge viewed as "totally unnecessary" the discovery directed to exploring claims against Cometa for "economic wrongdoing and fraud." Although under Maine law proof of such wrongdoing could have affected alimony, 19-A Me. Rev. Stat. Ann. § 951(1)(M) (1998) (repealed 2000, with equivalent provision codified at 19-A Me. Rev. Stat. Ann. § 951-A(5)(M) (Supp. 2000)), the judge's disallowance reflected Dunn's

own concession after discovery that the misconduct issue would not be pursued at trial.  The judge added:

> Judging from the evidence I heard at trial, Mr. Dunn decided not to pursue economic misconduct because there was not a shred of evidence to support a finding of economic misconduct or fraud.

Shortly after the divorce judgment, in April 1999, Dunn's father, acting on behalf of himself and Dunn, brought the present action against Cometa in the federal district court in Maine.  The complaint, based on diversity, set forth seven counts:

> •Counts I and II related to Cometa's management of Dunn's care, insurance and property during his incapacity; the first count, charging breach of fiduciary duty, and the second, charging negligence and waste, concerned Dunn's lodging in a rehabilitation facility for a year, the lapse of his private health insurance, and the substitution of Medicaid or Supplemental Security Income (SSI) as the basis for his support and medical care.

> •Counts III-V charged intentional infliction of emotional distress, negligent infliction of the same, and "malice"; these counts were grounded in charges that Cometa had inflicted distress on Dunn (1) by her mismanagement of his care, insurance and property (in particular, by her keeping him in care facilities rather than their or his father's home so that she could conduct an affair); (2) by her alleged verbal abuse of Dunn (she said in order to motivate him); and (3) by conduct related to her romantic association with a third party during Dunn's incapacitation.

-5-

•Count VI charged Cometa with breaching a contract with Dunn's father as to payment for construction work on a Georgia house for Dunn; and count VII called for recovery on an unjust enrichment theory for the care provided to Dunn by his father between Dunn's move to Georgia in June 1997 and the divorce decree in December 1998.

After interrogatory answers clarified certain of the counts, Cometa moved to dismiss the case on the ground that counts I-V were within the domestic relations exception to federal court jurisdiction or so closely associated with it as to warrant dismissal, and that the remaining counts, in and of themselves, would not support federal jurisdiction. Thereafter, the magistrate judge wrote a detailed memorandum recommending a grant of the motion as follows: that counts I-II be dismissed as within the domestic relations exception, that counts III-V be dismissed on abstention grounds because they "implicate murky, cutting-edge areas of Maine public policy," and that counts VI-VII be dismissed because--after the other claims were dismissed--they failed to satisfy the jurisdictional amount requirement. The district court adopted the recommendation, and this appeal on Dunn's behalf followed.

The district court, to whom we attribute the reasoning of the magistrate judge, dismissed the first two counts of the complaint as encompassed by the domestic relations exception to federal jurisdiction. This exception, delineated by <u>Ankenbrandt</u>

in 1992, "divests the federal courts of power to issue divorce, alimony, and child custody decrees."  Ankenbrandt, 504 U.S. at 703.  The limitation is one on subject matter jurisdiction, and is therefore not waivable by the parties.  The aim of the exception is to keep federal courts from meddling in a realm that is peculiarly delicate, that is governed by state law and institutions (e.g., family courts), and in which inter-court conflicts in policy or decrees should be kept to an absolute minimum.

Despite the breadth of the phrase "domestic relations exception" and the potential reach of the exception's aim, Ankenbrandt made clear that the exception is narrowly limited. In general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree.  This narrow construction led the Court in Ankenbrandt to hold that the exception did not apply to tort claims there at issue despite their intimate connection to family affairs, 504 U.S. at 704; the claims there were by a mother, on behalf of her daughters, charging their father, now

divorced, and his companion with sexual and physical abuse of the children, id. at 691.[1]

In our own case, the district court deemed the exception to apply to counts I and II of the complaint because under state law the economic misconduct charged in those counts could have affected the level of alimony. Indeed, as we have seen, Dunn initially conducted discovery in the divorce case into such matters as Cometa's actions in allowing Dunn's private health insurance to lapse and in allegedly transferring property interests originally held by him. The question now posed is whether tort claims based on these same events, later asserted in a separate lawsuit, are within the domestic relations exception. We think they are not.

The underlying events--like many in the domain of the law--can affect more than one set of legal relationships. Fraud, for example, may give rise to a civil tort suit, to a criminal prosecution, possibly to divorce and surely to the allocation of property incident to a divorce. But this does not make a civil tort suit for fraud, even between those presently or formerly married, a suit for divorce or alimony; and the same

---

[1]Needless to say, even this narrow construction of the exception leaves open difficult cases at the margin. See, e.g., Friedlander v. Friedlander, 149 F.3d 739, 740 (7th Cir. 1998) (suit to collect unpaid alimony).

is true where (as here) the wrongs charged are not fraud but breach of fiduciary duty or negligence and waste.  Since Ankenbrandt limits the domestic relations exception to claims for divorce, alimony and child custody decrees, it follows that counts I and II are not foreclosed by the exception.  See Johnson v. Rodrigues, 226 F.3d 1103, 1111-12 (10th Cir. 2000); Catz v. Chalker, 142 F.3d 279, 292 (6th Cir. 1998).  But cf. Kahn v. Kahn, 21 F.3d 859, 860 (8th Cir. 1994).

        This does not mean that Dunn's tort suit is necessarily unaffected by the divorce case.  All kinds of connections can be imagined in the abstract: the one here that could be troubling for Dunn is that Cometa might assert res judicata--claim preclusion rather than issue preclusion--based on the fact that Dunn could have asserted the conduct charged in counts I and II to enlarge his alimony claim.  In fact, Cometa's answer to the complaint in this case does assert res judicata as a defense, although without explanation.  Just what the res judicata effect of the divorce case might be, if any, is a matter of Maine law on which we need not speculate for it does not affect the district court's subject matter jurisdiction.

        However, in narrowly construing the domestic relations exception, the Supreme Court in Ankenbrandt opened the way to a different limitation:

> [I]n certain circumstances, the abstention
> principles developed in <u>Burford</u> . . . might
> be relevant in a case involving elements of
> the domestic relationship even when the
> parties do not seek divorce, alimony, or
> child custody.  This would be so when a case
> presents "difficult questions of state law
> bearing on policy problems of substantial
> public import  whose importance transcends
> the result in the case then at bar."
> <u>Colorado River Water Conservation Dist.</u> [v.
> <u>United States</u>, 424 U.S. 800, 814 (1976)].

504 U.S. at 705-06.  The district court thought that this version of <u>Burford</u> applied to, and justified dismissal of, counts III-V of the complaint.

Counts I-V all present "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case . . . at bar."  Counts I and II both respond centrally to Cometa's alleged misfeasance or wrongful nonfeasance in allowing Dunn's private insurance policy to lapse.  Cometa says, it appears, that this policy did not cover the custodial care Dunn needed; Dunn appears to say that he should have been brought home and that Cometa's loyalty as a wife was compromised by her own entanglement with a third party.  Constructing a proper legal framework for resolving such charges amounts to regulating the marriage itself, a traditional state enterprise.[2]

---

[2] <u>Cf.</u> <u>Minot</u> v. <u>Eckardt-Minot</u>, 13 F.3d 590, 593-94 (2d Cir. 1994) ("A state court should lead the way in developing the law

-10-

Similarly, counts III-V focus upon the claim that Cometa caused emotional harm to Dunn by leaving him in custodial care, by harsh words (which she says were to goad him toward recovery), and by her signs of affection for the third party. Again, such claims implicate Maine's policies regulating conduct within marriages, and, in this case, uncertainties in Maine law regarding the legal significance of the charged conduct are not resolved merely by saying, as Dunn's father does, that Maine has eliminated interspousal immunity for "the intentional infliction of emotional distress through physical violence and accompanying verbal abuse," Henriksen, 622 A.2d at 1140.

Admittedly, the case for abstention would be even stronger if the claims here could not be resolved without deciding a dispute as to family status under state law, see Ankenbrandt, 504 U.S. at 706, or if the relief sought would interfere with the state courts' machinery for divorce, alimony or child custody, e.g., DeMauro v. DeMauro, 115 F.3d 94, 98-100 (1st Cir. 1997). Neither situation is present here: this case simply asks a federal court to decide in the first instance a

_____

[for something amounting to a 'tort of custodial interference'], balancing the delicate issues involved here."); Henriksen v. Cameron, 622 A.2d 1135, 1139 (Me. 1993) (discussing the "special" policy concerns involved in "[d]eciding actions for intentional emotional distress arising from conduct occurring within the marital setting").

-11-

series of sensitive legal questions about the duties and privileges of parties to a then existing marriage.

Still, it is enough that abstention in this case fits squarely within the above quoted language from Ankenbrandt concerning Burford abstention and, in addition, makes good sense as a means to "soften the tensions" of the dual federal-state court system, Pennzoil Co. v. Texaco Inc., 481 U.S. 1, 11 n.9 (1987). This case presents purely state law claims. The claims are based upon conduct in a family context, and whatever the parallels to non-family litigation, that context must affect the legal framework to be applied. Finally, the legal framework for those claims is not fully developed under state law (or at least we have found no like cases and Dunn has pointed us to none).[3] If state law were clear, there would be no reason to abstain in this case.

Of course, abstention, where it is permissible at all, is often a matter within the district court's discretion, at least where (as here) the judgment whether to abstain depends on

---

[3]Nor is this a case where the uncertainties can be reduced to a few, simply formulated abstract legal questions, which would make certification an alternative approach. Compare Stone v. Wall, 135 F.3d 1438, 1441-43 (11th Cir. 1998) (finding abstention inappropriate for what was "just a tort suit for money damages," but certifying to the Florida Supreme Court the question whether there was a cause of action for interference with the parent-child relationship).

-12-

an interplay of factors.  DeMauro, 115 F.3d at 99-100 (contrasting the more "automatic" abstention categories derived from Younger v. Harris, 401 U.S. 37, 45, 54 (1971)).  But there is no point here in remanding to the district court for an exercise of that discretion as to counts I and II; the court's stated reasons for dismissing them virtually assure that a remand would simply result in substituting abstention as the proper label for deferring to state courts.  As for counts III-V, abstention has already been approved by the district court.

This brings us to remedy.  In Quackenbush v. Allstate Ins. Co., 517 U.S. 706 (1996), the Supreme Court held that dismissal of a common law damage action is not allowed under Burford abstention; where the relief sought is money damages (rather than injunctive or other discretionary relief), Quackenbush permits the district court only to stay the federal action pending state proceedings.  517 U.S. at 730-31.  This mandate may seem a surprising result--sometimes the state action would predictably afford full relief or, alternatively, negate the basis for relief in any court--but Quackenbush's directive is unqualified.

Presumably the district court ordered dismissal as to counts III-V because neither side called its attention to Quackenbush.  In this court Dunn's opening brief ignores

-13-

Quackenbush, and it is Cometa who cites the case and suggests a remand to be followed by a stay. Conceivably, Dunn has no interest in such limited relief on appeal; a protective state court action was filed by Dunn's father for both him and his son after the district court dismissal, and it may be that there is no statute of limitations problem and that they foresee no further role for the federal action if they are forced to litigate first in the state court.

In all events, we think that the soundest course in this case is to vacate the dismissal of all counts and remand for a stay in accordance with Quackenbush pending resolution of the filed state court action, unless both sides agree to dismissal without prejudice or some other course acceptable to the district court. Neither side has addressed the implications of such a stay for counts VI and VII, and we leave that issue for the parties to address in the district court.

The judgment of the district court is vacated and the matter remanded for the entry of a new judgment and stay consistent with this opinion. Each side shall bear its own costs on this appeal.

It is so ordered.