Sarah Fitzpatrick MANDEL, Plaintiff

v.

TOWN OF ORLEANS, and Melissa Novotny, and Kenneth Green, Chief of Police; and other as Yet Unnamed Officers of the Orleans Police Department; Individually and in Their Official Capacities as Chief of Police and Police Officers of the Town of Orleans, Defendants

No. CIV.A. 02–11795–REK.

United States District Court, D. Massachusetts.

Dec. 9, 2002.

Elizabeth M. Clague, Brockton, MA, for Sarah Fitzpatrick Mandel, Plaintiff.

Samuel Perkins, Thomas P. Campbell, III, Leonard H. Kesten, Brody, Hardoon, Perkins & Kesten, Boston, MA, for Town of Orleans, Melissa Navotny, Kenneth Green, Defendants.

### Opinion and Order

KEETON, District Judge.

### I. Pending Motion

Pending for decision is plaintiff's Motion for Preliminary Injunction or Temporary Restraining Order.

### II. Procedural History of the Case

Plaintiff filed suit against defendants in a trial court of the Commonwealth of Massachusetts on September 3, 2002, alleging violations of plaintiff's constitutional rights. On September 9, 2002, defendants removed to this court—the United States District Court for the District of Massachusetts. On September 20, 2002, this court heard arguments regarding plaintiff's motion for a temporary restraining order and ruled that an evidentiary hearing would be necessary before the court could determine whether either a restraining order or a preliminary injunction could appropriately be issued. The court then

issued on September 20, 2002 an Order Regulating Non–Jury Hearing (Docket No. 2) and set October 8, 2002 as the first day of the hearing. The hearing began on that date and continued until the parties presented their closing arguments on November 18, 2002. On Friday, November 15, 2002, defendant filed a motion to recuse and a motion to stay proceedings (Docket No. 48). The court heard arguments on both motions on Monday, November 18, 2002 and denied both motions in an opinion issued on November 19, 2002 (Docket No. 53). Plaintiff has filed a motion to amend her complaint (Docket No. 40), and this court has deferred ruling on that motion (Docket No. 53).

### III. Jurisdiction

■ Counsel for defendant challenges the jurisdiction of this court to hear any or all of the issues presented in this case. Before discussing the merits of plaintiff's motion, therefore, I must first address the jurisdictional issue. Defense counsel appears to argue that under the domestic relations exception to federal court jurisdiction, a federal court may not hear issues regarding child custody and that, because this case indirectly involves issues of child custody, it is outside the scope of this court's authority to hear and decide any issue in this case. I find that the "domestic relations exception" does not apply to this case and that this court does have jurisdiction.

In *Ankenbrandt v. Richards*, 504 U.S. 689, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992), the United States Supreme Court defined the scope of the domestic relations exception. According to that case, "the domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree...." *Id.* at 704, 112 S.Ct. 2206. Following *Ankenbrandt*, a panel of the First Circuit stated:

Despite the breadth of the phrase "domestic relations exception" and the potential reach of the exceptions aim, *Ankenbrandt* made clear that the exception is narrowly limited. In general, lawsuits affecting domestic relations, however substantially, are not within the exception unless the claim at issue is one to obtain, alter or end a divorce, alimony or child custody decree.

*Dunn v. Cometa*, 238 F.3d 38, 41 (1st Cir.2001).

Although the case at hand may involve custody orders and other domestic relations issues, plaintiff is not asking this court to issue, alter, or invalidate any divorce, alimony, or custody decree. This case, therefore, does not fall into the domestic relations exception. This court has jurisdiction to hear this case.

### IV. Court's Concern about Courtroom Conduct

The aggressive manner in which the defendants' attorney, Attorney Campbell, cross-examined plaintiff's witnesses on DAY ONE of the evidentiary hearing caused me such deep concern that I spoke about it extensively on the record early on DAY TWO. The proceedings on DAY TWO commenced with arguments of counsel about the scope of matters to be considered in the evidentiary hearing. Transcript, pages 2–3 through 2–9. I then made and explained a ruling that I would have to hear evidence before deciding the disputed fact questions that would have to be decided to determine whether a restraining order or preliminary injunction should be issued. Also, I explained that I would have to hear evidence on disputed facts bearing on jurisdiction. *Id.*, pages 2–9 through 2–12. Then I stated and explained my deep concern about the conduct of Attorney Campbell and the defendants Gould and Novotny, which obviously was causing plaintiff to suffer severe emo-

tional distress and also causing the witnesses to suffer significant emotional distress.

Now, I am stating that as a reflection of observations I have made of proceedings before me, both the observations of counsel for the defendant and the performance of counsel for the defendant, and observation of the town's representative here in my presence in the courtroom where I could obviously not fail to observe it. And I state it on the record because, of course, that does not appear in the cold, factual transcript that the Reporter will be producing. And it is nevertheless one of the things that a reviewing court considering my decision needs to know as one of the material facts about the emotional charge, the emotional element occurring in this courtroom, and the participation of counsel and the town's representative in creating that tense emotional circumstance and in causing the severe emotional distress that the plaintiff has suffered, she herself has suffered right here in the courtroom.

Now, I cannot decide the motion for preliminary injunction without taking into account the things that I've just been stating to you and explaining to you and taking into account how they bear upon the issues of fact and law that I must decide in order to make my decision on the plaintiff's motion for preliminary injunction.

Now, I have spoken thus far only of the harm occurring right here in the courtroom in this hearing, the harm to the plaintiff. Now I call attention to another potentially far more severe consequence; that is, the risk of harm to the children and to their mother. On the basis of the evidence before me, including those exhibits that you're asking me to strike, is compelling evidence that the children have been harmed by their father.

Now, I'm not making any final finding on this question at this point because, in the first place, the father is not a party to this proceeding, and I think before I make findings on that subject, I should at least consider with you and with your help whether he should be invited to appear in person or by counsel in this proceeding if he wishes to do so. You'll note that I have not said "required" because I have serious concerns about whether the subpoena authority that I have would extend to making that requirement, unless he comes into the jurisdiction, the territorial jurisdiction of this court and is while here served with a subpoena to appear before this court, which of course would dramatically change that situation with respect to his potential participation and the potentiality that he is in some way bound by findings that the court makes that may affect his interest as well as the interest of other persons present.

I turn now to another extremely disturbing feature of this case as it has developed before me, the town and its investigative officers, who are supposed to be seeking evidence impartially, not seeking evidence as an advocate or representative or agent, which they couldn't be, and that's one reason I say I cannot agree with the plaintiff's position. Obviously the town cannot be an agent of the father. That's just as a matter of law not a possibility to be considered and one of the reasons it is not a possibility to be considered is that as a matter of law the town is not supposed to be a partisan representative of any of the parties to this case, the mother or the father or the children. Instead, to the extent that a police officer of the town or anyone else representing the town is charged with a responsibility for investigating and developing evidence that may be useful to any tribunal or any agency,

administrative agency that has to make decisions with respect to this whole array of matters, it is supposed to be impartial, not an advocate.

Transcript, pages 2–13 through 2–15. See further explanation of my concern, *id.* at 2–15 through 2–19, closing with the statement, "Now I haven't said fully all of the things that are disturbing me and concerning me at this point, but I felt that I should at least state this much because I want your help now, now immediately. You may be heard further." The colloquy among counsel and the court on this subject continued from *id.* 2–19 through 2–25.

## V. Declaratory Relief

### A. Introduction and Finding of Probable Cause

I first note that because of the failure of counsel, parties, and witnesses for both sides to be forthcoming with relevant information, this court's ability to make findings was hindered. On the basis of the filed submissions and the evidence and argument presented at the hearing, the court finds probable cause to believe that plaintiff's constitutional rights have been violated by Sergeant Timm Gould and by Officer Melissa Novotny at Sergeant Gould's direction. Additional findings stated in other parts of this opinion, below, support this probable cause finding.

### B. Defendants' response

■ Throughout the evidentiary hearing in this matter, defendants emphasized two factors to support their contention that Orleans police did not violate plaintiff's and the Mandel children's rights: (1) defendants were merely following a court order and (2) defendants were required by Massachusetts law to enter the children into a missing children database. Neither of these contentions, however, persuades the court that the defendants did not violate plaintiff's constitutional rights.

This court finds nothing in any state-court order requiring or authorizing the Orleans police to launch an international investigation or to disseminate information about the plaintiff to multiple persons and agencies within and outside the Commonwealth of Massachusetts. Nor does any state-court order instruct the Orleans police to misinform the agencies to which it sends communications in the course of their investigation. Nor does any state-court order instruct them not to inform persons and agencies of relevant information, or to ignore and fail to take actions to limit the consequences of investigative actions that violate constitutionally protected rights of the plaintiff.

The statute on which defendants rely, Mass. Gen. Laws c. 22A § 4, is also insufficient to negate plaintiff's constitutional claim. Even if the court interprets the statute to require the Orleans police to enter the Mandel children in some missing child database, defendants cannot use that statute to justify going well beyond those requirements and by doing so cause plaintiff's constitutional rights to be violated.

### C. Violation of due process

■ Probable cause exists also to believe that plaintiff's substantive due process rights were violated by defendants Gould and Novotony, and their counsel acting on their behalf. To establish a violation of substantive due process, a plaintiff "must demonstrate a violation of an identified liberty or property interest protected by the due process clause." *Pittsley v. Warish,* 927 F.2d 3, 6 (1st Cir.1991). The court finds probable cause to believe that defendants violated at least two of plaintiff's liberty interests: (1) plaintiff's right to a fair hearing and (2) plaintiff's right to familial associational privacy.

## D. Sergeant Timm Gould's testimony

Sergeant Gould testified, and in the circumstances of this case I conclude that it is beyond genuine dispute, that he directed a dispatcher to enter the Mandel children in both the state and national databases for missing children, CJIS and NCIC respectively. Sergeant Gould caused information to be entered in both databases indicating that plaintiff had been charged with some form of kidnapping. Sergeant Gould also testified that he directed an investigation in which he communicated with and requested assistance from Massachusetts State Police, local police departments in New Hampshire, the National Customs service, the FBI, and Canadian customs. Sergeant Gould's testimony alone is enough to establish that this extensive international investigation was well beyond the scope of what would have been necessary or appropriate. He testified,

> we didn't have any probable cause that Sarah was going to flee to avoid prosecution, and we didn't have any probable cause, just very thin information, that she was going to leave the Commonwealth.

Transcript Page 10–22, Lines 7–10.

 No evidence was presented that Sergeant Gould attempted to limit the consequences of any of these actions. The record does include testimony, which I credit, from Detective Timothy Craig of the Manchester, New Hampshire Police Department, that when Detective Craig spoke with Sergeant Gould about the incident Craig asked whether everything was on the "up and up" as opposed to being a situation involving a custody battle. Craig testified that Sergeant Gould said that everything was in order and that plaintiff was out on bail on a felony in Massachusetts.

Sergeant Gould did not inform Detective Craig of any of the custody issues or the abuse allegations against Marc Mandel.

Even when given an opportunity to limit the extensive reach and likely consequences of his actions that would be likely to violate plaintiff's constitutionally protected rights, Sergeant Gould did nothing and instead misinformed those he had approached for help in the investigation.

Sergeant Gould has asserted that his conduct is protected by qualified immunity. I find that his conduct described in the three paragraphs immediately above this one is not within the scope of the objective standard that this court must apply.

## E. Officer Novotny's testimony

Officer Novotny testified, and I find it to be beyond genuine dispute, that plaintiff informed Officer Novotny of plaintiff's suspicions that her son, John Mandel, had been abused by his father. Officer Novotny also testified that she then began an investigation (of much smaller scope than the later investigation involving the plaintiff), interviewed plaintiff, and went with plaintiff to Children's Cove for both Mandel children to be evaluated. Officer Novotny testified that she thought plaintiff truly believed that John Mandel was abused. Officer Novotny testified, creditably, that this was insufficient evidence to file criminal charges against Marc Mandel. But it does not follow that she and others in the Orleans police force had evidence that plaintiff's allegations were completely unfounded. They acted improperly in adopting the assumption that plaintiff's allegations were completely unfounded and proceeding then to act on that premise.

## F. Plaintiff's right to a fair hearing

I find also, on the basis of the record before me, taken together with the findings recited above, that probable cause exists to believe that Sergeant Gould violated plaintiff's right to a fair hearing. Because of the steps Sergeant Gould took

and his failure to limit the consequences of his own actions, probable cause exists to believe that plaintiff was hindered from coming to this court to assert her constitutional rights. For that reason, this court issued its order and amended order of October 30, 2002.

██ Also, plaintiff was entitled to, and did not receive, a fair hearing before or promptly after the Orleans police department took certain actions identified in the record before this court, including: (1) agreeing to work with and assist Marc Mandel in effectuating a civil custody order against plaintiff, (2) assisting in causing plaintiff to be charged with kidnapping, and (3) entering information about plaintiff and the Mandel children into CJIS and NCIC databases.

Sergeant Gould testified that all three of these actions began on August 30, 2002. Although the Orleans police took these actions, they did not afford plaintiff a fair hearing before or promptly after taking such actions aimed at depriving plaintiff of her children and assisting in bringing about felony criminal charges against plaintiff. The Orleans police did not promptly give plaintiff an opportunity to be heard on the numerous accusations and charges made against her, and instead relied on Marc Mandel's information, despite plaintiff's earlier interactions with Orleans police in which plaintiff had expressed credible concerns regarding child abuse by Marc Mandel.

## G. Plaintiff's parental rights

██ I find that probable cause exists to believe that by launching the excessively broad investigation without limiting the consequences or affording plaintiff a fair hearing, Sergeant Gould violated and by his direction caused others to violate, plaintiff's right to familial associational privacy. *Pittsley*, 927 F.2d at 8 ("in order to establish a violation of a right to familial associational privacy, the state action must be directly aimed at the parent-child relationship.") According to *Suboh v. District Attorney's Office of Suffolk*, 298 F.3d 81 (1st Cir.2002), "the interest of parents in the care, custody, and control of their children is among the most venerable of the liberty interests embedded in the Constitution." *Id* at 91 (quoting *Hatch v. Dep't of Children, Youth & Their Families*, 274 F.3d 12, 20 (1st cir.2001)). This right is protected by both substantive and procedural due process. *Id.* (holding that there is a "right of a parent to procedural due process protections before a governmental official resolves the disputed issue of custody of a child, when there are known competing claims to custody"). By assisting Marc Mandel through an excessive investigation, and thereby ignoring plaintiff's earlier allegations of threats and abuse and the disputes over custody, defendants likely violated plaintiff's constitutionally protected parental rights.

## H. Violation of duty to protect

██ I find that in the distinctive circumstances of this case, defendants had an affirmative duty to protect plaintiff, the very person they were charging with crimes and against whom defendants launched an international investigation. Defendants may also have had an affirmative duty to protect the Mandel children, a duty that Orleans police did not fulfill. Although the law does not impose any general affirmative duty to protect or rescue those in peril, the record in this case as thus far developed supports a finding of probable cause to believe that this case is likely to fall into either a special relationship exception or a state-created danger exception to the general rule of no duty to rescue.

As was true in *Suboh* in the record before the Court of Appeals at the time of

its decision, it is true on the record before this trial court in this case at this time, that the challenged actions are "not on the 'hazy border' between acceptable and unacceptable behavior." *Suboh* at 97. They are over the line.

Remaining for consideration by this court in this case, however, are questions regarding qualified immunity and related matters regarding the scope of appropriate declaratory and other equitable relief.

## VI. Preliminary Injunction or Temporary Restraining Order

■ In order to obtain a preliminary injunction, such as is requested by plaintiff, the plaintiff has the burden of satisfying four factors: (1) the likelihood of success on the merits; (2) the potential for irreparable harm if the injunction is not granted; (3) the harm outweighs any hardship that would be inflicted on the defendant by an injunction; and (4) the public interest will not be adversely affected by the injunction. *Planned Parenthood League of Mass. v. Bellotti*, 641 F.2d 1006, 1009 (1st Cir.1981).

Ordinarily the purpose of a preliminary injunction is to preserve the status quo so that upon full adjudication on the merits the district court can more effectively remedy any discerned wrongs. *CMM Cable Rep., Inc. v. Ocean Coast Props., Inc.*, 48 F.3d 618, 620 (1st Cir.1995). The Court of Appeals for the First Circuit has cautioned that a preliminary injunction that has the effect of disturbing, rather than preserving, the status quo "normally should be granted only in those circumstances when the exigencies of the situation demand such relief." *Massachusetts Coalition of Citizens with Disabilities v. Civil Defense Agency*, 649 F.2d 71, 76 n. 7 (1st Cir.1981).

On October 30, 2002, this court issued an amended order stating: "Officials other than judicial officials of the Commonwealth are prohibited by this Order from taking any action that interferes in any way with the plaintiff's appearance before this court...." (Amended Order, Docket No. 32). I credit the testimony of Sergeant Timm Gould that he has complied and will continue to comply with this order as long as it remains in effect.

In these circumstances, I find that, if I extend the effective period of the Amended Order of October 30, 2002, the status quo can be preserved and the potential for irreparable harm can be decreased without the issuance of a restraining order or a preliminary injunction that orders Sergeant Gould not to do something that in all likelihood he would not do in any event, unless and until this court's Amended Order of October 30, 2002 has been vacated by order of a judge of this or a higher court.

Although I do not order that defendants do so, they may on further reflection decide that they should forthwith, at their own initiative take action to remove Ava Mandel from the CJIS or the NCIC in an attempt to limit the consequences of their previous actions.

## VII. Things Not Decided

### A. Introduction

The evidentiary hearing that this court completed on November 18, 2002 and on which the present opinion is based, was limited to receiving evidence bearing upon this court's deciding whether it has jurisdiction, and if it does, whether this court should issue a restraining order, preliminary injunction, or some other form of order allowing some form of relief, equitable in nature. As explained in Part V, above, one of the possible forms of relief is declaratory.

Another form of limited relief that may be appropriate even if no injunction or restraining order is issued, is that it may be appropriate for this court to issue an

order setting a time for the next Case Management Conference in this case, ordering plaintiff to be present at that time, and declaring that this court's Amended Order of October 30, 2002, prohibiting interference with plaintiff's appearance in this court when ordered to be here, will remain in effect until that time unless before that time this court's order is vacated by a judge of this court or a higher court.

I proceed below to consider whether I should order this limited form of relief to protect plaintiff's rights to fair process.

Also, to guard against any claims of misunderstanding what has been decided and what has not been decided in this evidentiary hearing conducted solely for the purpose of deciding plaintiff's claims of jurisdiction and for issuing or deciding not to issue a restraining order or preliminary injunction, I state explicitly some things non-parties (including attorneys who are not parties) have asked that I decide and I have declined even to purport to decide either during the evidentiary hearing or in this opinion.

### B. Evidence Received For Limited Purpose

In numerous instances scattered throughout the course of the evidentiary hearing, I received evidence that I ruled to be admissible because of its bearing on issues of credibility of oral testimony in court, or issues of credibility of hearsay declarations or hearsay-within-hearsay declarations, or credibility of documentary evidence.

The fact that, in making rulings announced orally during the evidentiary hearing or stated in this opinion, I have taken into account evidence so received for the limited purpose stated does not mean that I have made any ruling on issues that might arise in later proceedings before me or before some other judge of this or another court. I explicitly declare that I

have not done so. In the first place, I conclude that I do not have authority to do so, because a person claiming to be affected adversely should have a right to be heard. In the second place, my rulings have not been and do not even purport to be rulings on any such issues.

These points about the limited purpose for which I have received evidence apply not only to natural persons and legal entities that have not been and are not now parties to this case, but also to attorneys (including attorneys of the firm of Brody, Hardoon, Perkins & Kesten, LLP) who have appeared in this case to represent one or more parties to this case and to attorneys who have appeared in this case (including Dennis Manessis and his counsel) only as witnesses or as attorneys for witnesses or other non-parties.

### C. No "Final" Findings Have Been or Are Made

The evidentiary hearing was limited in scope to consideration of jurisdictional issues and preliminary relief. All findings made during the course of the evidentiary hearing and in this opinion are not and do not purport to be "final." They are, instead, as is ordinarily true of findings bearing upon granting or denying a restraining order or preliminary injunction, made on the record that is before the court. That record is sparse, compared with what can reasonably be expected to be in the record before the court at trial. They are not and do not purport to be binding except and to the extent that they bear upon jurisdictional determinations or orders granting or denying preliminary relief.

### D. Issues Regarding Attorneys' Professional Responsibilities That Remain Undecided

Beginning at a point quite early in the evidentiary hearing, on the morning of

DAY TWO, the court called attention to and expressed concern about the aggressive manner of Attorney Campbell's cross-examination of a non-party witness and the certainty that it was causing severe emotional distress to the witness and to the plaintiff, because of the personal and familial relationship existing between the witness and the plaintiff. See Part IV above.

I have concluded that I should make no findings at the present time as to whether Attorney Campbell's conduct during this evidentiary proceeding was in violation of his professional obligations as an officer of the court. The primary reason for this decision is that, before I could decide this matter with appropriate confidence in the correctness of the decision, I would need to allow both Attorney Campbell and Attorney Clague an opportunity to present further evidence and argument. I conclude that it is more in the public interest as well as the interests of the parties that I proceed promptly to decision on the jurisdictional issues and issues regarding preliminary injunction and declaratory relief.

This priority applies with even greater force to issues regarding Attorney Manessis and his counsel. They do not even represent a party to this case, as does Attorney Campbell.

**ORDER**

For the foregoing reasons, it is ORDERED:

The clerk is directed to enter forthwith on a separate document an order as follows:

(1) This court has jurisdiction over this case that extends in scope to authority to issue the declaratory relief allowed in this order.

(2) Plaintiff is entitled to the following declaratory relief: It is hereby declared that probable cause exists to believe that plaintiff's constitutional rights to fair process and protection of the privacy of familial relationships have been violated by defendants.

(3) Declaratory relief having been allowed to the extent stated in paragraphs (1) and (2) above, this court denies plaintiff's motion for restraining order or preliminary injunction, but subject to the declaration stated in part (4) below.

(4) The next Case Management Conference in this case is set for 9:00 a.m., March 6, 2002. The plaintiff is hereby ordered to be present in person at that time. This court's Amended Order of October 30, 2002 remains in effect, to assure her ability to be present, until that time unless before that time the Amended Order of October 30, 2002 has been vacated by order of a judge of this or a higher court.