**Sarah Fitzpatrick MANDEL,**
**Plaintiff, Appellee,**

v.

**TOWN OF ORLEANS, et al.,**
**Defendants, Appellants.**

No. 03–1123.

United States Court of Appeals,
First Circuit.

Heard April 8, 2003.

Decided April 15, 2003.

Thomas P. Campbell with whom Samuel Perkins and Brody, Hardoon, Perkins & Kesten LLP were on brief, for appellants.

Elizabeth M. Clague, for appellee.

Before BOUDIN, Chief Judge, TORRUELLA and HOWARD, Circuit Judges.

BOUDIN, Chief Judge.

This is an appeal from a preliminary injunction issued by the district court against the Town of Orleans, Massachusetts, its police chief, and two individual officers prohibiting specific actions by them. The injunction was obtained by Sarah Mandel incident to a civil rights suit brought by her against the defendants, but its origin lies in divorce and custody litigation between Sarah Mandel and her husband Marc Mandel that resulted in a Maryland state court custody order adverse to Sarah Mandel. This order in turn led to enforcement and related proceedings in Massachusetts state court, also resolved described hereafter.

For present purposes, an abbreviated history of events will suffice. Sarah and Marc Mandel married in May 1997. They lived in Maryland (Marc is a state prosecutor) and had two children: Ava, now four years old, and John, now three years old. In June 2001, after discord, Sarah took the children to Orleans, Massachusetts, and filed for divorce and custody of the children in the Circuit Court of Baltimore County, Maryland. By agreement, temporary custody was awarded to Sarah with visitation by Marc.

Thereafter, Sarah claimed that Marc, during an agreed visit with the children in Massachusetts on February 3, 2002, had sexually abused John, a charge Marc vigorously denied.[1] Sarah reported this allegation to the Orleans police and, on February 5, 2002, obtained a temporary protective order from the state district court in Orleans. A week later, after a hearing, the state court vacated the order. After the children were interviewed, the state authorities did not pursue any charge against Marc.

Later in February, Sarah filed in the Barnstable Probate and Family Court (Orleans is in Barnstable County) a request for custody of the children and a protective order; the request was denied, the denial affirmed by the Appeals Court, and an appeal is now before the Massachusetts Supreme Judicial Court. In May 2002, Sarah returned to the Maryland court asking it to modify its prior custody order and, in June, Marc asked the court to hold Sarah in contempt for violating the original visitation provisions.

Proceedings in the Maryland court during the summer of 2002 included an order holding Sarah in contempt, a trial scheduled for July on permanent custody postponed to August at Sarah's request, her failure to appear for a scheduled deposition, and finally her attorney's withdrawal on the day of trial in August on grounds he said that ethics restrictions forbade him to reveal. After hearing witnesses from Marc (Sarah did not appear), the court awarded him custody. In a strongly worded opinion, the court described Sarah as a "pathological" or "purposeful" liar who "will do and say anything" including "falsely accuse Marc of sexual abuse...."

Marc immediately returned to Massachusetts to secure custody. He obtained from the Barnstable Probate and Family Court an ex parte order to enforce his Maryland judgment, which directed the Orleans Police Department to assist Marc

---

1. Sarah so concluded because John, when she changed his diaper during the visitation (after Marc had been alone with the children), had red and irritated skin. Marc said that John already had a skin irritation when he arrived and that it had become further irritated during the visit.

in obtaining custody of the children. Sarah, apparently avoiding the police, sought temporary relief from the same state court, which denied her application. After providing Sarah a further chance to surrender the children, the police charged Sarah with kidnaping. Sarah is currently awaiting trial on these charges and is serving a home detention sentence for civil contempt in Massachusetts for failing to disclose the whereabouts of Ava Mandel to the Barnstable County Probate and Family Court.

On September 3, 2002, Sarah filed the present civil rights action in state court against the Town of Orleans, its police chief, and other officers, charging that they had violated her rights under the federal constitution and state law. The gist of the complaint was that the police had selectively enforced the laws, first by refusing to prosecute Marc for child abuse and by helping him get custody of the children and second by seeking to arrest her for refusing to comply with the custody order. She sought both an injunction, including temporary relief, and damages. The defendants removed the case to federal district court.

The federal district court held eleven days of hearings between October 8 and November 18, 2002, hearing testimony from witnesses including Sarah. Marc, prudently as it turned out, did not intervene. In the middle of the hearings, the Scituate Police Department located John Mandel and turned him over to Marc. The next day, October 30, 2002, the district court issued an order prohibiting the defendants "and anyone acting in concert or in aid of the defendants" from (1) removing the children from Massachusetts without the permission of the district court and (2) "taking any action that interferes in any way with the plaintiff's appearance before this court" pending the hearings.

On December 9, 2002, the district court said that it was denying Sarah's request for an injunction but it also directed that its October 30, 2002, order remain in effect. *Mandel v. Town of Orleans*, 233 F.Supp.2d 232, 239, 241 (D.Mass.2002). The court rejected without detailed discussion the defendants' jurisdictional and related objections to its involvement. *Id.* at 234. The defendants appealed from the district court's December 9 order and, after concluding provisionally that this was an appealable order, this court expedited the appeal. On March 6, 2003, the district judge—after refusing defendants' earlier request that he recuse himself—ordered that the case be reassigned.

■ At the threshold of this appeal, we conclude that the injunctive relief granted by the district court is immediately appealable. The injunction explicitly restrains the defendants from taking two different sets of actions; it was entered without limitation of time (temporary restraining orders are limited to ten days); and it is therefore appealable as the grant or continuation of a preliminary injunction. 28 U.S.C. § 1292(a)(1) (2000); *Sierra Club v. Marsh*, 907 F.2d 210, 212–13 (1st Cir. 1990).[2]

■ Turning then to the injunction, we begin with that branch of the order that prohibits the Orleans Police Department or anyone acting in concert with them from removing the children from Massa-

---

**2.** Sarah argues that the appeal is not timely because the defendants filed their notice of appeal more than thirty days after the October 30 order was entered. *See* Fed. R.App. P. 4(a)(1)(A). However, the defendants timely appealed the December 9 order, which is appealable itself whether it is viewed as one adopting anew or merely continuing the original prohibition.

chusetts. The defendants first argue that this part of the injunction is barred by the domestic relations exception to federal court jurisdiction. This exception prohibits federal courts from issuing or altering "divorce, alimony, and child custody decrees." *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992).

■ The doctrine where it applies governs claims over child custody even where they are cloaked in the "trappings" of another type of claim. *Congleton v. Holy Cross Child Placement Agency, Inc.*, 919 F.2d 1077, 1078–79 (5th Cir.1990). However, the courts are divided as to whether the doctrine is limited to diversity claims and this court has never decided that issue.[3] The debate is esoteric but, as federal law increasingly affects domestic relations, one of potential importance. We need not resolve the issue here because this branch of the injunction more clearly offends another broader constraint on federal court authority.

■ The *Rooker–Feldman* doctrine— with certain exceptions (*e.g.*, habeas corpus)—precludes a lower federal court from entertaining a proceeding to reverse or modify a state judgment or decree to which the assailant was a party. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923); *D.C. Ct. of App. v. Feldman*, 460 U.S. 462, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Although res judicata doctrine would often achieve similar effects, *Rooker–Feldman* is at least quasi-jurisdictional, *Picard v. Members of the Employee Retirement Bd.*, 275 F.3d 139, 145 (1st Cir.2001), premised on the rule that among federal courts only

the U.S. Supreme Court has authority to invalidate state civil judgments. Although sometimes minimized by scholars, *cf. Chemerinsky, Federal Jurisdiction* § 8.1, at 450 (3d ed.1999), the doctrine is widely used by the federal court to prevent end-runs around state judgments.

■ *Rooker–Feldman* applies whether or not the federal and state causes of action are technically the same for purposes of claim preclusion, *see, e.g., Maple Lanes, Inc. v. Messer*, 186 F.3d 823, 825 (7th Cir.1999), *cert. denied* 528 U.S. 1118, 120 S.Ct. 939, 145 L.Ed.2d 817 (2000), or whether all of the familiar conditions for issue preclusion are met. *See, e.g.*, Restatement (Second) of Judgments § 28 (1982). It is not necessary that the federal action formally seek to invalidate the state judgment; it is enough if the federal action would in substance defeat or negate a state judgment, for example if "the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." *Hill v. Conway*, 193 F.3d 33, 39 (1st Cir.1999) (quoting *Pennzoil Co. v. Texaco Inc.*, 481 U.S. 1, 25, 107 S.Ct. 1519, 95 L.Ed.2d 1 (1987) (Marshall, J., concurring)); *see also Garry v. Geils*, 82 F.3d 1362, 1369 (7th Cir.1996).

■ In this case, the first branch of the injunction frustrates both the Maryland custody decree, which awarded Marc permanent custody of the two children, and the Massachusetts enforcement order, which implemented the Maryland decree in Massachusetts. To begin with the Maryland decree, it awarded Marc custody after a proceeding to determine which parent should have custody of the children;

---

**3.** *Compare United States v. Bailey*, 115 F.3d 1222, 1231 (5th Cir.1997), *cert. denied* 522 U.S. 1082, 118 S.Ct. 866, 139 L.Ed.2d 764 (1998) *and United States v. Johnson*, 114 F.3d 476, 481 (4th Cir.), *cert. denied* 522 U.S. 904,

118 S.Ct. 258, 139 L.Ed.2d 185 (1997) *and Flood v. Braaten*, 727 F.2d 303, 308 (3d Cir. 1984), *with Thompson v. Thompson*, 798 F.2d 1547, 1558 (9th Cir.1986).

and the decree certainly contemplated that Marc was entitled to have the children live with him in Maryland where he resided. Sarah began the Maryland custody proceeding herself and was free to argue to the Maryland court that Marc had abused John and so should not have custody. The district court sought to revisit the abuse issue in the evidentiary hearing and, in preliminary findings incident to the injunction, seemingly relied in part on its view that Marc may have or did in fact abuse John.

Sarah argues in response that she is merely challenging the Massachusetts enforcement order or the way that the police carried out the Massachusetts order, which directed the Orleans Police Department to assist Marc Mandel in obtaining physical custody of the children. However, the district court's December 9 order even more directly frustrates this Massachusetts order. The Massachusetts state court ordered the Orleans Police to help Marc obtain custody of the children; the district court effectively prohibited the police from helping Marc obtain custody of the children since his obvious purpose is to take them to Maryland.

Like other states, Massachusetts has a scheme—virtually mandated by federal law, *see* 28 U.S.C. § 1738A(a) (2000)—for implementing custody orders issued by other states. Mass. Gen. Laws ch. 209B, § 2(e) (2000). Perhaps in Massachusetts an enforcement order can initially be secured ex parte where it merely implements a full-scale custody decree obtained in another state; the order in this case scheduled a hearing for the next day. This may or may not present a constitutional issue,

*Morrell v. Mock,* 270 F.3d 1090, 1095–1100 (7th Cir.2001), *cert. denied* —— U.S. ——, 123 S.Ct. 71, 154 L.Ed.2d 14 (2002), but it does not avoid the *Rooker–Feldman* doctrine: Sarah was formally a party to the enforcement proceeding and was free to ask the state court to undo or revisit its enforcement order on constitutional or other grounds; she was not free to secure its effective invalidation by a federal judge.[4]

 The second branch of the district court injunction prohibits the defendants from "taking any action that interferes in any way" with the plaintiff's appearance before the district court, "where she is ordered by this court to appear from day to day" for hearings. The injunction was issued after Sarah was confined to her home for civil contempt in refusing to disclose the whereabouts of Ava and John to the Barnstable Probate and Family Court and after she was charged with parental kidnaping in proceedings that are now underway.

What the district court had in mind in issuing this restriction is unclear but, taken at face value, it arguably prohibits Massachusetts police from detaining Sarah incident to the civil contempt proceeding or arresting her incident to the parental kidnaping charge. The injunction says that it does not prevent "judicial officers" in Massachusetts from conducting proceedings; but this is hardly much comfort—or less a frustration of ongoing state proceedings— if the police are themselves enjoined from, or threatened with contempt for, implementing state court orders in criminal or contempt proceedings. At oral argument, counsel for defendants stressed the cloud

---

4. *See, e.g., Snider v. City of Excelsior Springs,* 154 F.3d 809, 812 (8th Cir.1998) (rejecting the plaintiffs' claim that *Rooker–Feldman* does not cover their suit because they did not have notice of the underlying state court action); *Ritter v. Ross,* 992 F.2d 750, 754–55 (7th Cir.) (holding that the plaintiffs' procedural due process claim stemming from a failure to receive notice and an opportunity to object to county foreclosure proceedings was barred by *Rooker–Feldman), cert. denied* 510 U.S. 1046, 114 S.Ct. 694, 126 L.Ed.2d 661 (1994).

of uncertainty cast by the decree over the operations of the police in relation to Sarah.

The practical interference with the state proceedings is manifest, and none of the limited number of exceptions to *Younger* abstention even arguably applies in this case (*e.g.,* lack of adequate state remedies). *Younger v. Harris,* 401 U.S. 37, 45, 53–54, 91 S.Ct. 746, 27 L.Ed.2d 669 (1969); *For Your Eyes Alone, Inc. v. City of Columbus.,* 281 F.3d 1209, 1215 n. 11 (11th Cir. 2002). Whether *Younger* applies to proceedings conducted by the police or other executive agencies independent of judicial proceedings is unsettled, *see, e.g., Rizzo v. Goode,* 423 U.S. 362, 380, 96 S.Ct. 598, 46 L.Ed.2d 561 (1976); Chemerinsky, *supra,* at § 13.3.5, 803–05, but in this case, in detaining or threatening to detain Sarah, the police were merely carrying out or acting pursuant to *court* orders.[5]

 Even if *Younger* did not apply, the district court had no demonstrated basis in this case to prevent the police from arresting Sarah for parental kidnaping or from enforcing her home confinement for contempt. Federal courts have writs available requiring that those in state custody be produced so that federal proceedings involving such persons can be conducted. 28 U.S.C. § 1651 (2000); *In re Wilkinson,* 137 F.3d 911, 915 (6th Cir.1998), *cert. denied* 525 U.S. 1106, 119 S.Ct. 873, 142 L.Ed.2d 774 (1999). But, so far as we know, the state would likely on request have produced Sarah for whatever federal hearings were required; even this narrower judicial remedy, never ordered, was apparently unnecessary.

In the hearings and in the order incident to the injunctive relief, the district court made extensive findings or observations on a range of subjects. These include Sarah's charge that Marc sexually abused John and, *sua sponte,* criticism of the defense for tough cross examination of Sarah and of the police for not taking a more sympathetic view of her position. Marc, attempting now to intervene, complains that the comments on his behavior besmirch his reputation; the police and their counsel say that they were only doing their job. Both ask that the district court's findings and comments be set aside.

We have authority to review a district court's initial findings to the extent that they were intended to support a preliminary injunction. *See, e.g., Agency Rent–A–Car, Inc. v. Connolly,* 686 F.2d 1029, 1039 (1st Cir.1982). But in this case it is far from clear which ones were designed to underpin the injunction and which were not. Nor is it necessary for us to review the findings: both prongs of the injunction must be vacated on other grounds: one under *Rooker–Feldman* and the other under the *Younger* doctrine and also as overbroad and unjustified on this record. At most, our review of the findings might furnish an additional ground for reversal.

So far as these findings or comments might otherwise affect future proceedings on remand, they appear to have been merely preliminary and should not be accorded law of the case status. *See Ellis v. United States,* 313 F.3d 636, 647–49 (1st Cir.2002) (explaining that "reconsideration is proper if the initial ruling was made on an inadequate record or was designed to be preliminary or tentative"). Defense

**5.** The courts have regularly applied *Younger* when the plaintiff is seeking a federal injunction against pending state proceedings even if the plaintiff sued the police or state prosecutor, rather than (or in addition to) the state court directly. *See, e.g., Suggs v. Brannon,* 804 F.2d 274, 278–79 (4th Cir.1986); *Caldwell v. Camp,* 594 F.2d 705, 707–08 (8th Cir.1979); *Citizens for a Better Env't, Inc. v. Nassau County,* 488 F.2d 1353, 1359 (2d Cir.1973).

counsel's reputation is also secure: nothing in the record suggests that counsel was unduly aggressive. As for Marc, he was not a party to the district court proceeding and comments about his supposed conduct, made in his absence, are neither binding upon him nor fairly to be held against him.

Throughout this appeal Sarah has argued that various of her claims are independent of any collateral attack on the Maryland and Massachusetts custody orders or any interference with pending state proceedings. For example, she asserts that the police conducted an illegal search in trying to recover the children and that the state has "selectively" declined to prosecute her husband. Whatever the merits or obstacles to such claims, they are not pertinent to the injunction and remain pending in the district court.

Accordingly, we *vacate* the injunction in its entirety and *remand* for further proceedings consistent with this opinion. The mandate shall issue forthwith.

*It is so ordered.*