**Abigail MOJICA, Plaintiff**

v.

**Nicolas NOGUERAS–CARTAGENA, Defendant.**

Civil No. 08–1240(SEC).

United States District Court, D. Puerto Rico.

Aug. 6, 2008.

Sonia B. Alfaro–De–La–Vega, San Juan, PR, for Plaintiff.

Nicolas Nogueras–Cartagena, Nicolas Nogueras Law Offices, San Juan, PR, pro se.

### OPINION AND ORDER

SALVADOR E. CASELLAS, District Judge.

The instant case is on the Court's docket pursuant to Defendant's notice of removal filed on 2/26/2008. *See,* Docket # 1. Defendant argues that the case is properly before this Court because there is diversity of jurisdiction. Plaintiff, who appears not be represented by Counsel, *see,* Docket # 8, did not file a motion to remand within the time allotted to do so. The absence of such motion, however, does not bar the Court's *sua sponte* order to remand if it concludes that subject matter jurisdiction is lacking, or that the removal statute's requirements have not been complied with.

The Defendant removed the above captioned case pursuant to 28 U.S.C.A. § 1441(a) arguing that there was diversity jurisdiction. By filing for removal, the Defendant paralyzed the proceedings in the state court including orders issued by the court pursuant to its continuing jurisdiction over the matter. Upon reviewing the documents filed with the Court, there are several reasons why this case is not removable to this Court and should be remanded. We explain.

The genesis of this case is a civil case for divorce by mutual consent filed by the Plaintiff in the P.R. Court of First Instance, Civil No. K D I2003–0483, *Abigail Mojica v. Nogueras, Nicolás.* *See,* Docket # 1, Ex. 2. Such case was filed on March 13, 2003, and final judgment was entered on March 20, 2003, whereby the parties were declared divorced, and the Court ordered the Defendant to pay to Plaintiff the monthly amount of $4,000 in alimony for the duration of her life. Docket # 1, Ex. 2, p. 25.

Over four years later, on June 12, 2007, the Plaintiff filed a motion informing the Court that the Defendant had lowered the alimony payments to $2,000 per month, in violation of the Court's March 20, 2003 judgment. *See,* Docket # 6, Ex. 1. After eight months of intensive litigation in the state forum; having the state court ordered the Defendant to show cause why he should not be found in contempt of court; and having the court issued an order to the parties to submit a detail of the payments made since the entry of the judgment, Defendant removed the case to this Court.

■ As stated before, it is apparent from the record that there are many reasons why this case is not properly before the Court. First, the removal is tardy. 28 U.S.C.A. § 1446(b) provides that

[t]he notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant,

through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within thirty days after the service of summons upon the defendant if such initial pleading ... is not required to be served on the defendant, whichever period is shorter. The civil action removed by the Defendant was filed with the P.R. Court of First Instance on March 13, 2003, and was adjudged on March 20, 2003. On June 12, 2007, Plaintiff filed a motion requesting a hearing because Defendant, on his own, had lowered the alimony payment fixed by the Court's March 20, 2003 divorce decree, without the Court's approval. It appears from the state court's docket that Defendant was served with a copy of such motion the same day it was filed. See, Docket # 1, Ex. 2, p. 24. Furthermore, the state court also sent him a show cause order on July 5th, 2007 and summoned him to a hearing. See, id., at 23. However, Defendant waited until February 26, 2008, to file the instant notice of removal. See, Docket # 1. At that time, Defendant had already been summoned for two evidentiary hearings, and had been ordered to file a motion, by March 3, 2008, detailing the alimony payments made so far. See, Docket # 1, Ex. 2, p. It follows that Defendant's notice of removal is tardy as it was not filed within thirty days of the service of the "initial pleading", which would be Plaintiff's June 12, 2007 motion.

█ Second, the Court also notes that, even if we were to hold that Defendant complied with the requirements of the removal statute, and that diversity jurisdiction was present in this case, abstention would still be appropriate under the domestic relations exception. The Supreme Court recognized such exception, in *dictum*, in *Barber v. Barber*, 62 U.S. 582, 21 How. 582, 16 L.Ed. 226 (1859). However, for many years district and appellate courts continued to apply the exception, until the Supreme Court in *Ankenbrandt v. Richards*, 504 U.S. 689, 703, 112 S.Ct. 2206, 119 L.Ed.2d 468 (1992) further clarified its extent. The *Ankenbrandt* Court squarely held that "the domestic relations exception, as articulated by this Court since *Barber*, divests the federal courts of power to issue divorce, alimony, and child custody decrees." *Id.* at 703. In doing so, it stated that "state courts are more eminently suited to work of this type than are federal courts, which lack the close association with state and local government organizations dedicated to handling issues that arise out of conflicts over divorce, alimony, and child custody decrees." *Id.* at 704.

The First Circuit has constantly adhered to the exception. *See, Sutter v. Pitts*, 639 F.2d 842, 843 (1st Cir.1981)("[i]t is firmly established that the federal courts do not have diversity jurisdiction to grant divorces, determine alimony and support obligations, or resolve conflicting claims of divorce parents to the custody of their children."); *Mandel v. Town of Orleans*, 326 F.3d 267, 271 (1st Cir.2003)("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees."). Because Plaintiff's motion in the state proceeding basically complains of Defendant modifying the alimony decree unilaterally, without her consent or that of the court, the final adjudication in this case—were we to exert jurisdiction—would be to issue a decree involving the obligation of Defendant to provide alimony to Plaintiff, which would fall within the domestic relations exception. *Mandel*, 326 F.3d at 271("[The domestic relations] exception prohibits federal courts from issuing or altering divorce, alimony, and child custody decrees.").

█ We also find a third reason to refuse to entertain this case; the propriety

of abstention, be it for the presence of family related matters, or the pendency of a state case where there has been intensive litigation. The First Circuit has stated that even if a case is not strictly fit for the application of the domestic relations exception, principles of comity would still make abstention appropriate. *See, Armstrong v. Armstrong,* 508 F.2d 348 (1st Cir.1974)(In a case where the parties— former spouses—disagreed as to the interpretation of the settlement of a divorce decree, the First Circuit stated that "in any event it is a case as to which sound federal policy as well as comity dictates abstention."); *see also, Sutter,* 639 F.2d at 843 ("[A]lthough the exception has been narrowly confined, we and other courts of appeals, have held that federal courts should abstain from adjudicating claims that are closely related to, though not within, the jurisdictional exception.") Because Plaintiff basically requests for the Court's alimony decree to be enforced, her request, and the eventual remedy, are the byproduct of a divorce case, this kind of abstention suits this case.

■ In the same vein, the Court finds this case suitable for yet another type of abstention: the *Younger* abstention. Although *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971), which created an abstention in cases pending adjudication in a state forum, was a criminal proceeding, the principle of abstention was later extended to civil proceedings meeting the criteria set in *Younger.* In *Middlesex County Ethics Committee v. Garden State Bar Association,* 457 U.S. 423, 102 S.Ct. 2515, 73 L.Ed.2d 116 (1982), the Supreme Court stated that "[t]he policies underlying *Younger* are fully applicable to noncriminal judicial proceedings when important state interests are involved." *Middlesex,* 457 U.S. at 432, 102 S.Ct. 2515. The *Younger* doctrine and its progeny "espouse a strong federal policy against federal-court interference with pending state judicial pro-

ceedings absent extraordinary circumstances." It further clarified that "the notion of comity includes a proper respect for state functions, a recognition of the fact that the entire country is made up of a Union of separate state governments, and a continuance of the belief that the National Government will fare best if the States and their institutions are left free to perform their separate functions in their separate ways." *Middlesex,* 457 U.S. at 431, 102 S.Ct. 2515. The *Middlesex* Court further pointed out that "[it] would trivialize the principles of comity and federalism if federal courts failed to take into account that an adequate state forum for all relevant issues has clearly been demonstrated to be available prior to any proceedings on the merits in federal court." *Id.* at 437, 102 S.Ct. 2515.

■ For a Court to abstain pursuant to the principles of *Younger* and *Middlesex,* there must be: (1) an ongoing state judicial proceeding, instituted prior to the federal proceeding, (2) which implicates an important state interest, and (3) provides an adequate opportunity for the plaintiff to raise the claims advanced in his federal lawsuit. *Brooks v. New Hampshire S. Ct.,* 80 F.3d 633, 638 (1st Cir. 1996). All these elements are present in this case. Prior to removal, there was a case pending in state court that related to the same matter now before the Court, where, for over eight months, the parties filed motions to the Court, orders were issued by the court, and hearings had taken place. Also, the interest of a state court in enforcing its decrees is a very important state interest. This is specially true in cases involving family matters. Also, the state case provided Defendant an adequate opportunity to raise any defense he may have had. Therefore, the principles set forth in *Younger* and *Middlesex* bear in favor of a finding of abstention. In sum, the Court

deems this case suitable for abstention under *Younger* and its progeny.

Another problem with Defendant's notice of removal is that he filed all the pleadings before the state court, as required by 28 U.S.C.A. § 1446(a), but failed to file a certified translation of all such documents as required by Local Rule 10(b). Said rule provides that "[w]henever a case is removed to this Court, there shall be filed with the record an English translation of **all** papers. Such translation shall be certified by a Court interpreter ..." To date, Defendant has failed to translate all documents as required by the Local Rule 10(b).

For the reasons explained above, it is the Court's opinion that there is no subject matter jurisdiction in this case insofar as the removal procedure was defective[1] and the domestic relations exception applies. Even if we found that subject matter jurisdiction vested upon the Court, we still find this case suitable for abstention, be it under *Younger* and its progeny, or under the related-to-family-matters abstention. As such, the Court hereby **REMANDS** this case to state court.

**SO ORDERED.**

---

1. As explained above, Defendant filed a tardy notice of removal and failed to file all documents in the English language as required by Local Rule 10(b).