Kamasinski v. Fitzgerald, et al.    CV-03-205-M   07/16/03
                    UNITED STATES DISTRICT COURT

                    DISTRICT OF NEW HAMPSHIRE


Theodore Kamasinski,
      Plaintiff

      v.                                    Civil No. 03-205-M
                                            Opinion No. 2003 DNH 121
Edward Fitzgerald, III,
Peter W. Heed, Daniel St. Hillaire,
and Martha Van Oot,
      Defendants


                          O R D E R


      Invoking the provisions of 42 U.S.C. § 1983, veteran pro se

litigant Theodore Kamasinski brings this action against New

Hampshire Superior Court Associate Justice Edward Fitzgerald,

III, New Hampshire Attorney General Peter Heed, Merrimack County

Attorney Daniel St. Hillaire, and New Hampshire Bar Association

President Martha Van Oot, each in his or her official capacity.

Kamasinski claims that his constitutionally protected rights have

been (and/or will be) violated if this court does not intervene

to: (1) block the enforcement against him of an injunction

entered by the state superior court (which enjoined Kamasinski

from engaging in the unauthorized practice of law); and (2)

declare that the state court's order is "in violation of the

United States Constitution and 42 U.S.C. § 1983." Complaint at 24.[1]

Each defendant moves to dismiss Kamasinski's complaint. Kamasinski objects.

## Background

Kamasinski did not attend law school, nor is he admitted to practice law in this or any other state. Nevertheless, he derives at least a portion of his income by providing legal advice and representation to citizens of New Hampshire. That fact, particularly in light of New Hampshire's statutory provision barring those who are not licensed attorneys from "commonly" engaging in the practice of law, N.H. Rev. Stat. Ann. ("RSA") 311:7, has prompted a fair amount of litigation in the

---

[1] Of course, the state court's order cannot be "in violation of" section 1983, since that statute does not vest citizens with any substantive rights. Instead, it merely provides a vehicle by which individuals may pursue civil actions against state actors for alleged violations of their federally protected statutory or constitutional rights. See, e.g., Graham v. Connor, 490 U.S. 386, 393-94 (1989) ("As we have said many times, § 1983 is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred.") (citation and internal quotation marks omitted).

2

state judicial system concerning the legality of Kamasinski's ongoing representation of clients.

The piece of state court litigation relevant to this proceeding was initiated in 2001. Kamasinski filed a petition for declaratory judgment in the state superior court, asking the court to declare that he was not engaged in the unauthorized practice of law. Respondents (defendants in this action), New Hampshire's Attorney General and the state bar association president, filed a cross-petition, seeking an order enjoining Kamasinski from providing any legal representation or rendering any legal services that violate RSA 311:7. See RSA 311:7-a (authorizing the attorney general to "maintain an action for injunctive relief in the supreme or superior court against any person who renders, offers to render, or holds himself or herself out as rendering any service which constitutes the unauthorized practice of law" and also authorizing the state bar association to intervene in that proceeding).

The procedural history of that case is described in detail in the superior court's order of January 30, 2003. Kamasinski v.

<u>McLaughlin</u>, 2003 WL 367745 (N.H. Super. Jan. 30, 2003).
Essentially, after Kamasinski repeatedly refused to comply with
discovery obligations in that case, the court granted
respondents' motion to compel and ordered Kamasinski to produce
the requested discovery material and information.  Nevertheless,
Kamasinski steadfastly refused.  In pleadings filed with the
court, Kamasinski did not deny that he had failed to comply with
the court's order.  Instead, he challenged the court's authority
to compel him to produce such discovery.  <u>Id.</u> at *1 n.1.  In
response, the court directed him to comply fully with its
discovery orders, or risk having all relevant and material facts
alleged against him deemed confessed.  Kamasinski neither
complied with the order nor did he move the court to reconsider.
<u>Id.</u> at *1.

After affording Kamasinski ample time to produce the
relevant discovery materials (which he did not do), the court
entered its order of January 30, 2003, which is the subject of
this litigation.  In it, the court concluded that Kamasinski was
engaged in the unauthorized practice of law, in violation of RSA

311:7, by virtue of having commonly practiced law without a license.  Id. *3.  The court went on to conclude that:

> [E]ven if Mr. Kamasinski's activities were protected by RSA 311:7, the Court finds that the well pleaded facts now taken as confessed establish that Mr. Kamasinski is not of good character, and thus, does not qualify to file an appearance on behalf of another pursuant to RSA 311:1.

Id. at *4.[2]  Accordingly, the respondents' cross-petition for injunctive relief was granted and Kamasinski was enjoined from engaging in the unauthorized practice of law.  Among other things, Kamasinski was enjoined from: (1) giving legal advice to anyone; (2) filing an appearance on behalf of any litigant in a state court or state administrative proceeding; (3) drafting or participating in the drafting of pleadings, briefs, or memoranda on behalf of any person other than himself; and (4) negotiating legal rights or responsibilities on behalf of anyone other than himself.  Id. at *5.

---

[2]  RSA 311:1 provides that, "A party in any cause or proceeding may appear, plead, prosecute or defend in his or her proper person, that is, pro se, or may be represented by any citizen of good character.  For the purposes of this section, a citizen shall be presumed to be of good character unless demonstrated otherwise." (emphasis supplied).

5

Kamasinski filed a timely motion for reconsideration of that order, which the superior court denied in an unpublished written opinion. Kamasinski v. McLaughlin, No. 2001-E-386 (N.H. Super. April 11, 2003). He did not, however, take an appeal to the New Hampshire Supreme Court. Instead, on May 13, 2003, he filed the instant federal petition for declaratory and injunctive relief, by which he seeks a judicial declaration that the state superior court's order of January 30, 2003, enjoining him from engaging in the unauthorized practice of law, is unconstitutional. He also seeks a temporary and permanent injunction prohibiting defendants from enforcing that state court order.

## Discussion

Each defendant advances several grounds in support of his or her motion to dismiss, including the Rooker-Feldman doctrine, principles of judicial and prosecutorial immunity, abstention doctrines, and comity. Kamasinski counters by saying none of the familiar arguments advanced by defendants is applicable to this particular case. He argues that this court should determine that it has subject matter jurisdiction over his claims and that it should neither dismiss nor stay these proceedings. He is

6

mistaken on several fronts.  But, because it is plain that the
Rooker-Feldman doctrine precludes this court's exercise of
jurisdiction over Kamasinski's complaint, the alternate grounds
for relief advanced by defendants need not be addressed, nor is
it necessary to discuss Kamasinski's misguided legal theories.

The Rooker-Feldman doctrine precludes a federal district
court from reviewing a final judgment entered in a state court,
and from considering claims that are inextricably intertwined
with those raised in the state court proceeding.  See Rooker v.
Fidelity Trust Co., 263 U.S. 413, 416 (1923); District of
Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476 (1983).
See also Wang v. New Hampshire Bd. of Registration in Medicine,
55 F.3d 698, 703 (1st Cir. 1995).  Federal claims are
inextricably intertwined with state court proceedings (even if
precisely the same claims were not raised previously in state
litigation) if the party had an opportunity to raise those claims
in the state court and if their resolution in federal court would
effectively provide a form of federal appellate review of the
state court's decision.  See Pennzoil Co. v. Texaco, Inc., 481

U.S. 1, 25 (1987) (Marshall, J., concurring); <u>Lancellotti v. Fay</u>, 909 F.2d 15, 17 (1st Cir. 1990).

Moreover, once a state court issues a final judgment, a federal district court lacks jurisdiction to review that decision even if the state judgment is patently wrong or was entered following patently unconstitutional proceedings. <u>See</u> <u>Feldman</u>, 460 U.S. at 486. Thus, a litigant may not seek to reverse a final state court judgment "simply by casting his complaint in the form of a civil rights action." <u>Ritter v. Ross</u>, 992 F.2d 750, 754 (7th Cir. 1993) (citation omitted).

In response to defendants' invocation of the <u>Rooker-Feldman</u> doctrine, Kamasinski says:

> Plaintiff argues against the application of the Rooker-Feldman abstention doctrine on grounds that the definition of the practice of law crafted by state Judge Fitzgerald is, in effect, <u>judicially created legislation</u>, or a statute or ordinance, which regulates the Plaintiff's behavior in a fashion that is unconstitutional and should be treated accordingly - that is, as a statute or ordinance rather than as a judgment.

8

Plaintiff's memorandum in opposition to dismissal (document no. 10) at 1 (emphasis supplied). Because the state statute governing the unauthorized practice of law does not define the word "commonly" or the phrase "practice of law," Kamasinski apparently believes that Judge Fitzgerald unconstitutionally encroached upon the province of the legislative branch when he gave meaning to those words and then applied them (as so construed) to the case pending before him, concluding that Kamasinski was violating state law by commonly practicing law without a license. Thus, Kamasinski asks this court to treat the superior court's order as if it were an (allegedly) unconstitutional statute.

Kamasinski's view of the state court's order is flawed and appears to be based on a fundamental misunderstanding of the role (and constitutional authority) of the judicial branch. As Chief Justice Marshall observed more than two hundred years ago, "[i]t is emphatically the province and duty of the judicial department to say what the law is. Those who apply the rule to particular cases, must of necessity expound and interpret that rule." Marbury v. Madison, 5 U.S. 137, 177 (1803). Consequently, in the

9

absence of a statutory definition of the words "commonly" and "practice of law," it is the role of New Hampshire's courts to discern their proper meaning and scope. See, e.g., Bilodeau v. Antal, 123 N.H. 39, 45 (1983) ("The trial court may properly act to prevent a person . . . from acting 'commonly' as legal counsel when it reasonably appears, as in this case, that to do otherwise would be to sanction the unauthorized practice of law. . . . Our holding today does not involve the situation in which a nonlawyer might appear once as a representative of a party. Nor do we mean to suggest that there is any single factor to determine whether someone is engaged in the unauthorized practice of law and, consequently, may be prohibited from undertaking the legal representation of another. That determination must be made on a case-by-case basis.").[3]

---

[3] Kamasinski says the court in Bilodeau "incorrectly empowered the trial courts with a legislative function to determine a definition of the practice of law and to fashion a prospective order based on that definition." That assertion is not only legally incorrect, but frivolous. A court does not perform "a legislative function" merely by ascribing meaning to ambiguous statutory language. It has long been established that one of the essential functions of the judiciary is to do just that. If the legislative branch should disagree with the courts' interpretation of a statute, it of course has the constitutional authority to amend the statute to more clearly convey its intent. See, e.g., 42 U.S.C. §1320a-2 (an amendment to the Social Security Act passed by Congress in response to the Supreme

As a fall-back position, Kamasinski says his current federal claims are not barred by the Rooker-Feldman doctrine because he did not have an adequate opportunity to raise them in the state court proceedings. Specifically, he says the "state court record reveals that none of the parties proposed a definition of the 'practice of law' or requested that state judge Fitzgerald define the 'practice of law.'" Plaintiff's memorandum at 5. That argument is frivolous as well. Kamasinski himself initiated the state court litigation in an effort to obtain a judicial declaration that he was not engaged in the "unauthorized practice of law," as that phrase is used in RSA ch. 311. In their cross-petition, the respondents moved the court to enjoin Kamasinski from engaging in the unauthorized practice of law. Consequently, whether Kamasinski was engaged in the "unauthorized practice of law" was at the very core of those state court proceedings. And, to resolve that dispute, the court necessarily had to take the preliminary step of ascertaining what the legislature meant to convey by the words "practice of law."

---

Court's opinion in Suter v. Artist M., 503 U.S. 347 (1992)).

11

Little more need be said about Kamasinski's legal
arguments.  It is sufficient to note that they are not
persuasive.  His petition for declaratory and injunctive relief
is little more than a thinly disguised effort to obtain federal
review and reversal of the injunction issued against him by the
state superior court.  To the extent Kamasinski entertains a good
faith belief that the state court injunction operates to deprive
him of federally protected rights, he could have (and should
have) taken an available appeal to the New Hampshire Supreme
Court.  If he were dissatisfied with the outcome in that forum,
he of course could have appealed his case to the United States
Supreme Court by way of a petition for certiorari.  He did not.
And, it is plain that this is not the proper forum in which to
pursue an appeal of a final judgment issued by an intermediate
state court - even an appeal cast in terms of a civil rights
action.  As the court of appeals for this circuit recently
observed:

> The <u>Rooker-Feldman</u> doctrine - with certain exceptions
> (e.g., habeas corpus) - precludes a lower federal court
> from entertaining a proceeding to reverse or modify a
> state judgment or decree to which the assailant was a
> party.  Although res judicata doctrine would often
> achieve similar effects, <u>Rooker-Feldman</u> is at least
> quasi-jurisdictional, premised on the rule that <u>among</u>

12

> federal courts only the U.S. Supreme Court has
> authority to invalidate state civil judgments.

Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2002)

(citations omitted) (emphasis supplied).


## Conclusion

To the extent Kamasinski thought the injunction issued by
the New Hampshire Superior Court violated his state or federal
rights, he should have pursued an appeal to the New Hampshire
Supreme Court.  He did not do so, and, under the well-known and
long-standing rule of Rooker-Feldman, this court lacks authority
to entertain his challenge to that state court injunction,
notwithstanding the fact that he has couched his challenge in
federal constitutional terms.  Kamasinski, like the plaintiff in
Mandel, "was formally a party to the [underlying state court]
proceeding and was free to ask the state court to undo or revisit
its enforcement order on constitutional or other grounds; [he]
was not free to secure its effective invalidation by a federal
judge."  326 F.3d at 272.

At this juncture, it is probably appropriate to note that Kamasinski is not the "typical" pro se litigant - that is, one who appears only rarely in state or federal court to advance his or her own personal interests. Instead, he is a frequent litigant in his own right and actually holds himself out to the public as a person schooled in the law, and one who possesses the skill, knowledge, and ethical standards necessary to adequately represent the legal interests of others.

Additionally, Kamasinski has represented to this court that, "[b]efore filing his federal complaint, [he] carefully considered all the abstention doctrines, including Rooker-Feldman, and satisfied himself that subject matter jurisdiction exists. After studying binding and relevant case law, [he] concluded that if the federal district courts have unquestionable jurisdiction to determine the constitutionality of any state statute (enacted by legislative action), the abstention doctrines cannot preclude a challenge to a court issued statute." Plaintiff's memorandum at 3. So, notwithstanding his fairly substantial experience in the judicial system and his claim to have "carefully considered" the impact of Rooker-Feldman on this action, Kamasinski still elected

14

to bring a civil action that is plainly without legal foundation.

At this point, it is fair to say that Kamasinski ought to at least understand, if not accept, the predictable application of Rooker-Feldman and other relevant legal concepts (e.g., abstention, res judicata, collateral estoppel) that have played a role in resolving this and other litigation in which he has been either directly or indirectly involved. While Kamasinski is not educated or trained in the practice of law, and cannot fairly be held to the high standard of substantive knowledge to which attorneys are routinely held, still, he professes to know and, based upon his experience in this and other judicial fora, should now know, much more than the average pro se litigant – both substantively and procedurally. In short, he is in a far better position than the average pro se litigant in terms of recognizing meritless and frivolous claims. In the future, therefore, he will be held to a much higher standard than is accorded unsophisticated pro se litigants when it comes to ruling on motions for attorneys' fees and sanctions. Meritless litigation brought by this plaintiff that imposes upon the time and

15

resources of named defendants will no longer be measured against the deferential standard applied to genuinely uninformed pro se plaintiffs.

On this occasion, however, defendants' motions for attorneys' fees are denied. To be sure, Kamasinski's efforts to deflect the application Rooker-Feldman (e.g., by characterizing the state court's order as "judicially created legislation") are simplistic and silly, but then, he probably considers those arguments to be novel and imaginative. Nevertheless, his points do at least facially recognize and address relevant legal issues. It's a stretch, but, however off-the-mark, his assertions arguably seek to raise the possibility of an extension of current law to reach his claims, albeit doubtfully in complete good faith.

So, on this occasion, the combination of Kamasinski's lack of legal education, training, and skill, enure to his benefit. That, coupled with his weak attempt to at least focus on dispositive issues, is enough to barely escape sanctions for bringing frivolous claims. That will not, however, be the case

in future litigation, as he is now well aware that lower federal courts do not review state court judgments, and he will be presumed to be well-versed in the law of abstention, res judicata, collateral estoppel, immunity, and, of course, <u>Rooker-Feldman</u>.

In light of the foregoing, defendants' motions to dismiss (document nos. 3, 4, 6, and 8) are granted and Kamasinski's complaint is dismissed with prejudice. Kamasinski's request for attorney's fees, as well as defendants' cross-motion for attorney's fees, are denied. The Clerk of Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

July 16, 2003

cc:   Theodore Kamasinski
      Martin P. Honigberg, Esq.
      Daniel J. Mullen, Esq.
      John A. Curran, Esq.
      Joseph F. McDowell, III, Esq.

17