**Richard BELL, Plaintiff,**

v.

**David DAWSON, Gaston County Police
Officer; Kelly Oaks, Gaston County
Police Officer; Paul Burgess, Gaston
County Police Officer; and the Coun-
ty of Gaston, North Carolina, Defen-
dants.**

**No. Civ. 3:99CV316–H.**

United States District Court,
W.D. North Carolina,
Charlotte Division.

April 20, 2001.

J. Thomas Hunn, David A. Phillips, Gastonia, NC, for plaintiff.

Martha R. Thompson, Stott, Hollowell, Palmer & Windham, Gastonia, NC, for defendants.

### *MEMORANDUM AND ORDER*

HORN, Chief United States Magistrate Judge.

**THIS MATTER** is before the Court on the "Defendants' Motion for Summary Judgment" (document # 14), "Memorandum in Support . . ." (document # 15), "Affidavit of David Dawson" (document # 16), and "Affidavit of Dave Cloutier" (document # 17), all filed February 28, 2001.

Following a telephonic inquiry by chambers staff to the Plaintiff's counsel, on April 6, 2001—three weeks after the deadline for filing a responsive brief had expired—the Plaintiff filed ". . . Affidavits in Opposition . . ." (document # 18). Howev-

er, the Plaintiff has not filed a brief or cited any authority in opposition to the Defendants' motion. Counsel for the Defendants has informed the Court that no reply will be filed.

The parties have consented to Magistrate Judge jurisdiction under 28 U.S.C. § 636(c), and this motion is now ripe for the Court's determination.

Having carefully considered the parties' arguments, the record, and the applicable authority, the undersigned will *grant* the Defendants' motion.

## I. *PROCEDURAL AND FACTUAL BACKGROUND*

Defendants David Dawson, Kelly Oaks, and Paul Burgess were at all times relevant to this action officers with the Gaston County Police Department. The Defendant Gaston County is a political subdivision of the State of North Carolina.

The Plaintiff Richard Bell, a white male, is a citizen and resident of Gaston County, North Carolina, who prior to the events giving rise to this action, was well known to the Gaston County Police Department.[1]

In the evening hours of April 4, 1997, the Plaintiff was gathered with a group of people, including his brother, William Darius Bell ("Darius"), outside a residence at 109 Lampan Lane at the Kendrick Avenue Trailer Park situated along Kendrick Avenue in Gaston County, North Carolina.

Within 500 feet of the general vicinity of this gathering, there are no less than six inhabited residences.

Around 7:05 p.m. that day, Gaston County 911 communications received a telephoned complaint of "shots fired" in the vicinity of Kendrick Avenue. Defendant Officer Burgess responded to the call. As Officer Burgess traveled down Kendrick Avenue, he heard "a lot of hollering" around Lampan Lane, and noticed approximately ten to fifteen people congregated outside the trailer. Plaintiff, who exuded a strong odor of alcohol, met Officer Burgess' police car in the middle of the road, and stated that "nothing was going on."[2] Then Officer Burgess saw Darius near the back of the trailer carrying a shotgun. In response to Officer Burgess' verbal command, Darius placed the shotgun and a silver handgun on the hood of a car. Officer Burgess called for back-up assistance[3] and then patted Darius down in a search for more weapons. Upon questioning, Darius and the Plaintiff each claimed to be the person who had fired the shotgun and both appeared to be highly intoxicated. The Plaintiff threatened to fight Officer Burgess if he attempted to arrest his brother, but Darius told the Plaintiff to sit down.[4]

The Defendant officers contend that Officer Burgess informed Darius that he was under arrest for discharging a firearm in

---

1. Prior to April 1997, Plaintiff had been arrested in Gaston County not less than eleven times for numerous misdemeanor and felony charges and was found or pled guilty to the following: communicating threats on 9/15/85; felony possession of cocaine and felony possession with the intent to sell or distribute marijuana on 4/6/88; intoxicated and disruptive on 3/18/90; consuming wine on a public roadway and inhaling toxic vapors on 5/18/90; driving while impaired on 6/2/90; and unauthorized use of a motor vehicle on 11/22/91.

2. In his responses to the Defendants' Interrogatories, the Plaintiff admitted that in the preceding 24 hours, he had consumed approximately 36 12-ounce cans of beer.

3. During Officer Burgess' initial confrontation with the Plaintiff and his brother, other officers, including Defendants Dawson and Oaks, arrived on the scene.

4. The parties dispute whether Plaintiff was ever seated after the officers arrived.

violation of a County ordinance. Darius responded by stepping back and bringing both fists up to a fighting stance. Officer Burgess talked with Darius who agreed to be and was handcuffed, but then became combative and continually attempted to kick the officers and cursed and threatened them. The officers responded by taking Darius to the ground and placing him on his stomach and then bringing him back to his feet in an attempt to gain control.[5]

As the officers began to struggle with Darius, the Plaintiff, continuing to make threats and curse, attempted to move towards his brother to assist him. Officer Burgess instructed Defendant Officer Dawson to arrest the Plaintiff. Officer Dawson informed the Plaintiff that he was under arrest and handcuffed him. The Plaintiff attempted to pull away from Officer Dawson's grasp of his upper arm and refused to obey the officers' commands to be still and not fight. The Plaintiff threatened the officers, saying he would "kick their ass" if they did not release Darius. At this time, Officer Dawson and Officer Leatherwood, who is not a defendant in this action, took Plaintiff to the ground in order to gain control. Plaintiff was on his back and refused to turn over or to lie on his stomach as commanded and Officer Dawson, with the assistance of Officer Leatherwood and Defendant Officer Kelly Oaks, rolled him onto his stomach. Officer Dawson placed pressure on Plaintiff's upper back with his hands to calm him down. Officer Oaks grabbed Plaintiff's feet to hold him stationary. The Plaintiff continued to curse and make threats. After Plaintiff was placed on his stomach, Officer Dawson and Officer Oaks assisted Plaintiff to his feet by rolling plaintiff to his side,

helping him to his knees, and then to his feet by holding onto his upper arm.

The Plaintiff disputes the Defendants' account by way of three affidavits from individuals claiming to be among the crowd at the trailer park. These single page affidavits state only that Darius fought with the officers; that the Plaintiff was seated in a lawn chair until he was knocked out of the chair during the officers' struggle with Darius; and that at some point thereafter, the Plaintiff was face down on the ground with Officer Oaks pushing her knee into the Plaintiff's back and Officer Dawson pulling back on the Plaintiff's arms. The affidavits do not disclose the witnesses' vantage point for observing the struggle, nor do they provide a detailed or coherent description of the entire chain of events.

It is undisputed that the Plaintiff continued to fight Officer Dawson but was finally escorted to a police car and placed in the back seat in a sitting position. While being transported to the county jail, Plaintiff lay down on the seat on his back with hands cuffed underneath him and begun to kick the police car rear right window. Plaintiff made threats to Officer Dawson, saying, "[i]f I see you on the side of the road, I'm going to shoot you, on duty or off, I don't care." Upon arrival at the county magistrate's office, Plaintiff calmed down until his brother entered with other officers. At that time, Plaintiff again began to disobey commands and refused to sit down. Officer Dawson held Plaintiff in a chair by putting his arm across Plaintiff's chest, while other officers held Darius against the wall.

Gaston County Magistrate Matt Hambidge issued three warrants against Plaintiff arising from this arrest, finding probable cause for the warrantless arrest on

---

**5.** Darius was subsequently transported to the county jail, but he continued to curse, threaten, and attempt to kick the officers and jailers.

April 4, 1997, for (1) "resist[ing], delay[ing] and obstruct[ing] [Defendant] Dawson, a public officer ... by struggling, fighting, and refusing to be lawfully arrested," in violation of N.C.Gen.Stat. § 14–223; (2) "threaten[ing] to physically injure ... [Defendant] Dawson," in violation of N.C.Gen. Stat. § 14–277.1; and (3) "discharg[ing] a firearm within 500 feet of a residence of another person," in violation of a Gaston County Ordinance.[6]

Plaintiff was relinquished to the jailers at the Gaston County Jail around 9:00 p.m. and was released on bond at 6:21 a.m. the following morning without any indication of medical complaints or injuries. Four days later, Plaintiff, complaining of left lower back/hip pain, saw Dr. Ron Kirpatrick at Gaston Internal Medicine Clinic. Plaintiff gave a history of an altercation with the police. Dr. Kirpatrick indicated that "in the wrestling, he may have pulled a muscle." The physical exam did not reveal any bruising, marks, abrasions, broken skin, or any other visible sign of injury. Plaintiff was diagnosed with a probable muscle strain in the lower back. In September 1997, Plaintiff had back surgery for a ruptured disc at L5–S1.[7]

On July 2, 1999, the Plaintiff filed this action in Gaston County Superior Court, alleging claims for relief under (1) 42 U.S.C. § 1983 for violations of his rights under the Fourth and Fourteenth Amendments to the U.S. Constitution; and (2) state common law claims for trespass by a public official, false arrest, assault, negligence, and gross negligence. The Defen-

dant officers have been sued in their official and individual capacities, while the Defendant Gaston County has been sued on a theory of *respondeat superior.*

On July 29, 1999, the Defendants removed the state action to this Court based on federal question jurisdiction. Removal appears to be proper and has not been challenged by the Plaintiff.

On February 29, 2001, the Defendants filed the instant "Motion for Summary Judgment" (document # 14). Despite telephonic inquiry from chambers staff, Plaintiff's counsel has elected not to file a brief in opposition, but has merely submitted the above-mentioned affidavits. This motion is now ripe for determination.

## II. *DISCUSSION OF CLAIMS*

### A. *The Summary Judgment Standard*

Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment should be granted when the pleadings, responses to discovery, and the record reveal that "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." *See also Charbonnages de France v. Smith,* 597 F.2d 406 (4th Cir.1979). Once the movant has met its burden, the nonmoving party must come forward with specific facts demonstrating a genuine issue for trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

---

**6.** In October 1997, in Gaston County District Court, the Plaintiff was convicted of the resist, obstruct, and delay charge as well as for communicating threats, but the firearm charge was dismissed. In January 1998, the Plaintiff was acquitted of the resist, obstruct, and delay and communicating threats charges following a jury trial in Gaston County Superior Court.

**7.** The Defendants cite the Plaintiff's doctor visit and later back surgery. *See* "Memorandum in Support ..." at 5 (document # 15). However, there are no medical records or any other documentation showing that the Plaintiff was injured during the arrest.

A genuine issue exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). However, the party opposing summary judgment may not rest upon mere allegations or denials and, in any event, a "mere scintilla of evidence" is insufficient to overcome summary judgment. *Id.* at 249–50, 106 S.Ct. 2505.

When considering summary judgment motions, courts must view the facts and the inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 255, 106 S.Ct. 2505; *Miltier v. Beorn*, 896 F.2d 848 (4th Cir.1990); *Cole v. Cole*, 633 F.2d 1083 (4th Cir.1980). Indeed, summary judgment is only proper "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there [being] no genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (internal quotations omitted).

Applying these principles, there are no genuine issues of material fact, and the undersigned will *grant* the Defendants' motion for summary judgment on each of Plaintiffs' claims, as discussed in greater detail below.

### B. *Section 1983 Claims and Qualified Immunity*

The Plaintiff alleges two Fourth Amendment claims under 42 U.S.C. § 1983: first, that the warrantless arrest violated his right to be free from unreasonable seizures; and second, that the officers used excessive force in arresting him, specifically in physically placing him on the ground when he did not respond to their verbal commands to "stop fighting." Since the Defendants have claimed that they are entitled to qualified immunity on each

claim, it will be helpful to begin with an overview of that doctrine before discussing the law underlying Plaintiff's substantive claims.

As the Fourth Circuit has stated,

The basic rules of § 1983 [qualified] immunity are well known. Underlying the doctrine is a desire to avoid overdeterrence of energetic law enforcement by subjecting governmental actors to a high risk of liability. The concerns behind the immunity defense are especially salient in the context of street-level police work, which frequently requires quick and decisive action in the face of volatile and changing circumstances. *The law thus shields police officers from civil liability unless the officer reasonably should have known that his actions violated clearly established constitutional rights.*

*Rowland v. Perry*, 41 F.3d 167, 172 (4th Cir.1994) (internal citations omitted) (emphasis added). *Accord Anderson v. Creighton*, 483 U.S. 635, 638, 107 S.Ct. 3034, 97 L.Ed.2d 523 (1987); *Malley v. Briggs*, 475 U.S. 335, 341, 106 S.Ct. 1092, 89 L.Ed.2d 271 (1986) (qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law"); *Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982) (government officials performing discretionary functions are entitled to qualified immunity from liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known"); *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir.1998) (en banc), *aff'd*, 526 U.S. 603, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); *and Maciariello v. Sumner*, 973 F.2d 295, 298 (4th Cir.1992) (qualified immunity protects law enforcement officers from "bad guesses in gray

areas" and ensures that they are liable only "for transgressing bright lines").

### 1. *Unlawful Arrest*

█ It is clearly established under the Fourth Amendment that individuals have the right to be free from unlawful seizures of their persons, including unlawful arrests. *See Imbler v. Pachtman,* 424 U.S. 409, 418–19, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976); *and Pierson v. Ray,* 386 U.S. 547, 554–555, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967).

█ A warrantless arrest is valid if the arresting officer has probable cause to believe the suspect has committed an offense. *See Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *Imbler,* 424 U.S. at 418, 96 S.Ct. 984; *United States v. Gray,* 137 F.3d 765, 769 (4th Cir.1998); *and Pittman v. Nelms,* 87 F.3d 116, 119 (4th Cir.1996) (in order to be entitled to qualified immunity, defendants need only show that they had reasonable suspicion, based on the information known to them at the time, to give rise to the arrest). An officer's decision that probable cause is present is reviewed under a totality of the circumstances test. *See Gates,* 462 U.S. at 238, 103 S.Ct. 2317; *and United States v. Lalor,* 996 F.2d 1578, 1581 (4th Cir.1993).

█ Initially, the Defendant officers believed that the Plaintiff had discharged a firearm in violation of a county ordinance. Indeed, Officer Burgess responded to a 911 call of "shots fired," *see Adams v. Williams,* 407 U.S. 143, 146, 92 S.Ct. 1921, 32 L.Ed.2d 612 (1972) (reasonable suspicion may be on information provided by a known informant); two firearms were in plain view at the premises; and the Plaintiff admitted that he had fired the shotgun.

█ Additionally, N.C.Gen.Stat. § 14–223 provides that it is unlawful to resist, delay, or obstruct an officer in carrying out a lawful arrest or any of his other lawful duties. *See State v. Lynch,* 94 N.C.App. 330, 333, 380 S.E.2d 397, 398–99 (1989). N.C.Gen.Stat. § 14–277.1 provides that it is unlawful to threaten to physically injure an officer. Moreover, under North Carolina law, officers are obligated to maintain the public peace. *See State v. Gaines,* 332 N.C. 461, 471–72, 421 S.E.2d 569, 574–75 (1992) (North Carolina law enforcement officers have the duty to keep the peace at all times, whether on or off duty).

As discussed in detail above, from the moment that Officer Dawson first questioned the Plaintiff and his brother, the Plaintiff began a continuing stream of verbal threats accompanied by attempts to move toward and assist his brother, who was himself resisting a lawful arrest. Under the totality of the circumstances, these officers had probable cause to believe that the Plaintiff had committed, at least, three offenses; that is, discharging a firearm in violation of a county ordinance; resisting, obstructing, and delaying an officer in carrying out his duties; and threatening bodily harm to an officer. *Accord Gates,* 462 U.S. at 238, 103 S.Ct. 2317. Consequently, the arrest was lawful. Accordingly, the undersigned will *grant* the Defendants' motion for summary judgment as to the Plaintiff's § 1983 claim for unlawful arrest.

### 2. *Excessive Force*

█ The Fourth Amendment also governs Plaintiff's excessive force claim, and it is clearly established under that amendment that individuals have the right to be free of excessive force during the course of an otherwise justified arrest. *See Graham v. Connor,* 490 U.S. 386, 395–96, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

█ As discussed above, government officials performing discretionary functions are entitled to qualified immunity from

liability for civil damages to the extent that "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727. In cases of alleged excessive force, a defendant officer's defense of qualified immunity is evaluated under the "reasonableness" standard articulated by the Supreme Court in *Graham, supra,* which provides:

> [The district court] must consider what a reasonable officer on the scene would have done, taking into account such factors as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.... Thus, the 'reasonableness' of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}\!/_{20}$ vision of hindsight.... The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

490 U.S. at 396–97, 109 S.Ct. 1865. *Accord Milstead v. Kibler,* 243 F.3d 157, 162 (4th Cir.2001) (applying *Graham* standard to § 1983 excessive force claim).

In applying the *Graham* reasonableness standard, the Fourth Circuit explained:

> Police officers are protected by qualified immunity when performing their duties within the scope of their employment insofar as their conduct does not breach "clearly established statutory or constitutional rights of which a reasonable person would have known...." [Q]ualified immunity is an immunity from suit, and not merely a defense to liability.... The "reasonableness" of a particular use of force must be judged from the perspective of a reasonable officer on the scene, rather than with the $^{20}\!/_{20}$ vision of hindsight.... The calculus of reasonableness must embody allowances for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.

*Sigman v. Town of Chapel Hill,* 161 F.3d 782, 786–87 (4th Cir.1998) (internal citations omitted). *Accord Behrens v. Pelletier,* 516 U.S. 299, 306, 116 S.Ct. 834, 133 L.Ed.2d 773 (1996); *Siegert v. Gilley,* 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991); *Mitchell v. Forsyth,* 472 U.S. 511, 526, 105 S.Ct. 2806, 86 L.Ed.2d 411 (1985); *Harlow,* 457 U.S. at 818, 102 S.Ct. 2727; *Elliott v. Leavitt,* 99 F.3d 640, 642 (4th Cir.1996) ("[t]he court's focus should be on the circumstances at the moment force was used and on the fact that officers on the beat are not often afforded the luxury of armchair reflection"); *and Pittman v. Nelms,* 87 F.3d 116, 119 (4th Cir. 1996) ("[o]ne of the purposes of immunity ... is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit").

Furthermore, the Fourth Circuit has recently held that minor discrepancies between the officers' versions of events and that of other witnesses do not create a triable issue of fact, explaining:

> In a rapidly evolving scenario ... a witness's account of the event will rarely, if ever, coincide perfectly with the officers' perceptions because the witness is typically viewing the event from a different angle than that of the officer. For that reason, minor discrepancies in

testimony do not create a material issue of fact in an excessive force claim, particularly when, as here, the witness views the event from a worse vantage point than that of the officers. *Anderson v. Russell*, 247 F.3d 125, 130 (4th Cir.2001) (where officer believed that decedent had a gun in his waistband and that decedent was lowering his hands to his waist, witness's statement that decedent's hands were above his head did not create a triable issue of fact).

■ To support his contention that the Defendant officers used excessive force, the Plaintiff submits only three single page affidavits, which, as discussed above, state only that Darius fought with the officers; that during the struggle between the officers and Darius, the Plaintiff was knocked out of a lawn chair; and that at some point thereafter, the Plaintiff was face down on the ground with Officer Oaks pushing her knee into the Plaintiff's back and Officer Dawson pulling back on the Plaintiff's arms. The affidavits do not disclose the witnesses' vantage point for observing the struggle, although common sense dictates that the officers, who were engaged in the struggle with Darius and the Plaintiff, must have been much closer to the Plaintiff than anyone else. Nor do the affidavits provide any time sequence for events, other than that the Plaintiff was seated when Darius first began to struggle with the officers. Most notably, the Plaintiff's affidavits do not address any events relating to the officers' belief that it was necessary to take the Plaintiff to the ground in order to gain control.

Indeed, it is undisputed that from the moment Defendant Officer Burgess arrived on the scene the Plaintiff was intoxicated and belligerent. After police backup, including Defendant Officers Dawson and Oaks, arrived, the Plaintiff threatened to fight Officer Burgess if he attempted to arrest his brother. After Darius was handcuffed and began to struggle, the Plaintiff threatened to "kick their ass" and repeatedly attempted to move towards his brother and assist him. After Officer Dawson informed the Plaintiff that he was under arrest and handcuffed him, the Plaintiff continued to struggle, attempt to pull away, and make threats. Officers Dawson, Oaks, and Leatherwood took the Plaintiff to the ground—on his back—in order to gain control and the record clearly reflects that this "take down" was accomplished in such a way that the Plaintiff was not even scratched or bruised. After the Plaintiff refused to roll over onto his stomach, the officers rolled him over and in the light most favorable to the Plaintiff, Defendant Officer Oaks placed her knee on the Plaintiff's back and Defendant Officer Dawson pulled on his arms. The officers then rolled the Plaintiff onto his side and assisted him in standing.

The Defendants have submitted the affidavit of Dave Cloutier, a General and Specialty Instructor certified by the North Carolina Criminal Justice Standards Commission and a FBI-certified Defensive Tactics Instructor, who has 30 years experience in law enforcement, who avers that:

taking a subject to the ground by his arms in order to gain control is a normal, reasonable, and justifiable standard police procedure when, as in this case, it reasonably appears to the officer that the subject is not complying to verbal orders given during the course of an arrest and is attempting to pull away from the officer's grasp and control. It is then appropriate police procedure, as occurred here, to turn a subject over to his stomach when on the ground for effective control, even if it requires a struggle between the subject and three police officers.... The alleged placement of a leg or knee on the back of the

Plaintiff during the struggle after the Plaintiff was informed he was under arrest and placed in handcuffs behind his back [and] the alleged pulling on the Plaintiff's arms ... [were] reasonable and justified under the circumstances ... [and were] consistent with ... standard training methods.

"Affidavit of Dave Cloutier" at 7–9 (document # 17).

The question is whether during the execution of a constitutionally valid arrest and confronted with an intoxicated and belligerent subject who did not comply with verbal commands to "stop fighting," but rather made repeated threats, moved to assist another subject in resisting a lawful arrest, and continued to struggle to get away from officers, a reasonable police officer should have known that clearly established constitutional law prohibited him from putting the Plaintiff forcibly on the ground. *Accord Taft v. Vines*, 83 F.3d 681, 684 (4th Cir.1996) (en banc) ("The issue presented by the excessive force claims is not whether the officers violated police procedures, or even whether they, in fact, violated the Fourth Amendment. Rather, the question is whether, confronted with the facts of this case, reasonable police officers should have known that clearly established constitutional law prohibited the methods used.")

The Plaintiff cites no authority in support of his contention that the officers' conduct violated any "clearly established constitutional law" and the undersigned is aware of none. In light of the fast moving, volatile, and often dangerous circumstances encountered in arresting intoxicated and belligerent subjects, especially in the midst of large crowds where firearms are present, the undersigned cannot conclude that the Defendant officers reasonably should have known that they were constitutionally required to delay gaining control of the Plaintiff and to continue to argue with him as he struggled to wrest himself away from them.

Accordingly, because these Defendant officers are entitled to qualified immunity as to the Plaintiff's § 1983 claim for excessive force, the undersigned will *grant* the Defendants' motion for summary judgment as to that claim.

### 3. *Municipal Liability Under § 1983*

The Plaintiff's failure to establish a constitutional injury—that is, his failure to establish a genuine issue of material fact on his underlying § 1983 claims—is fatal to his § 1983 claim against Gaston County. *See Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978); *and Carter v. Morris*, 164 F.3d 215, 217–19 (4th Cir.1999). Moreover, assuming *arguendo* that Plaintiff "suffered a deprivation of [his] federal rights, it is by now well settled that a municipality is only liable under section 1983 if it causes such a deprivation through an official policy or custom." *Carter*, 164 F.3d at 218, *citing Monell*, 436 U.S. at 690–91, 98 S.Ct. 2018. *Accord City of Canton, Ohio v. Harris*, 489 U.S. 378, 388, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Grayson v. Peed*, 195 F.3d 692, 697 (4th Cir.1999); *and Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir.1994). The Plaintiff, however, has alleged liability only on the basis of *respondeat superior* and has not identified any county policy or custom that caused an alleged deprivation of his rights. *See Pembaur v. City of Cincinnati*, 475 U.S. 469, 479, 106 S.Ct. 1292, 89 L.Ed.2d 452 (1986) (municipal liability under § 1983 does not attach under *respondeat superior*, but rather only where the municipality was "actually responsible"); *and Riddick v. School Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir.2000).

Accordingly, the undersigned will *grant* the Defendants' motion for summary as to Plaintiff's § 1983 claim against Gaston County as well.

### C. *State Law Claims*

The Plaintiff has also brought state common law claims for trespass by a public official, false arrest, assault, negligence, and gross negligence.

■ In North Carolina, findings that an arrest was supported by probable cause and that a law enforcement officer's use of force was "reasonable" for the purposes of finding qualified immunity to a § 1983 excessive force claim are fatal to the Plaintiff's state law tort claims. *Accord Sigman,* 161 F.3d at 788–89 (granting summary judgment as to North Carolina wrongful death claim based on defendants' alleged "negligence"); *Glenn–Robinson v. Acker,* 140 N.C.App. 606, 624–25, 538 S.E.2d 601, 615 (December 5, 2000) (same as to assault and battery and false arrest); *Estate of Fennell ex rel. Fennell v. Stephenson,* 137 N.C.App. 430, 439–40, 528 S.E.2d 911, 917 (2000) (finding of qualified immunity also precluded plaintiff's state law wrongful death claim based on defendant's alleged recklessness and gross negligence); *and Fowler v. Valencourt,* 108 N.C.App. 106, 114, 423 S.E.2d 785, 790 (1992), *rev'd in part on other grounds,* 334 N.C. 345, 435 S.E.2d 530 (1993) (same as to assault and battery).

Accordingly, the undersigned will *grant* the Defendants' motion for summary judgment as to the Plaintiff's state law claims.

### III. *ORDER*

**NOW, THEREFORE, IT IS HEREBY ORDERED:**

1. The "Defendants' Motion for Summary Judgment" (document # 14) is **GRANTED** and the Complaint is **DISMISSED WITH PREJUDICE.**

2. The Defendants shall have sixty (60) days from the entry of this Memorandum and Order to submit a Petition for Costs and Attorneys Fees against the Plaintiff and/or against Plaintiff's counsel for bringing, maintaining, and prolonging this utterly frivolous action, should they elect to do so.

3. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties.