Marier v. Town of Allenstown        CV-01-398-JD  10/08/03

UNITED STATES DISTRICT COURT FOR THE
                      DISTRICT OF NEW HAMPSHIRE


Robert H. Marier and
Barbara J. Marier

     v.                                Civil No. 01-398-JD
                                       Opinion No. 2003 DNH 172
Town of Allenstown, et al.


                          O R D E R


     The plaintiffs, Robert H. and Barbara J. Marier, bring civil
rights claims, along with related state tort claims, against the
Town of Allenstown and individual Allenstown police officers,
arising from the circumstances of Robert Marier's arrests in the
spring of 2000.  The defendants move for summary judgment,
challenging the Mariers' claims on the merits and asserting
qualified immunity.  The Mariers object to summary judgment.


                      Standard of Review

     Summary judgment is appropriate when "the pleadings,
depositions, answers to interrogatories, and admissions on file,
together with the affidavits, if any, show that there is no
genuine issue as to any material fact and that the moving party
is entitled to a judgment as a matter of law."  Fed. R. Civ. P.
56(c).  The party seeking summary judgment must first demonstrate
the absence of a genuine issue of material fact in the record.

See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986).  All reasonable inferences and all credibility issues are resolved in favor of the nonmoving party.  See id. at 255.

## Background

The events at issue in this case arise from the Mariers' relationships with the Allenstown police during their long residence in Allenstown.  During the mid-1990s, Robert Marier publicly criticized defendant Ronald Montplaisir, a captain in the Allenstown Police Department, for his role in an incident in 1988, which resulted in a police brutality suit in federal court and a default judgment against the town.  Robert also ran for the Allenstown Board of Selectmen in the mid-1990s on a single issue platform of having Montplaisir fired.

Robert Marier owned a four-bay commercial garage on Granite Street in Allenstown.  In October of 1999, Robert rented one bay to Henry Bellemare, for use in his roofing business.  A dispute arose during the winter of 2000 between Robert Marier and Bellemare about vehicles Bellemare parked next to the garage which Marier asserted violated his lease and impeded snow

2

removal.  On March 5, 2000, Marier had the vehicles towed. Bellemare claimed that the vehicles were damaged by the towing and filed a complaint with the Allenstown police.  He threatened to break water pipes in the garage if Marier did not pay for the damage to his vehicles.

On March 8, 2000, Bellemare called the Mariers asking Robert to come to the garage to help him because of a problem with the furnace and flooding from the water pipes in his garage bay. Bellemare then called the Allenstown police and requested officers to "stand by" while Robert Marier investigated a leak in the pipes at the garage.  Barbara Marier also called the police to request their presence at the garage while Robert investigated the problem.

Robert Marier went to the garage, inspected the furnace and water pipes in Bellemare's bay of the garage, and turned off the water main.  Allenstown police officers Gregory Martakos and Robyn Syrek responded to the call for police at the garage. Officer Martakos asked Marier whether he had padlocked the propane tank, to which Marier answered "no" and then "maybe," and then refused to cooperate further with Martakos's inquiries. Martakos and Syrek told Marier to leave and not to return.

On his way home, Robert met his wife, who was on her way to the garage with a copy of the garage lease and other papers to

3

show to the police. They both drove to the garage. Once there, Robert parked his pickup truck and walked toward his wife's car to get the papers she brought. Barbara got out of her car.

Officers Martakos and Syrek told Robert Marier to leave or he would be arrested, but he refused. Barbara Marier tried to explain that they were bringing papers to show that they owned the garage, but she was ignored. Martakos thought that a confrontation between Robert Marier and Bellemare was imminent. He told Marier that he was under arrest.

The Mariers contend that Martakos approached Robert from behind, pulled his arms up behind him, pushed him onto the fender of Barbara Marier's car, threw him face first onto the ground, and thrust his knee into his back. The defendants add that when Martakos tried to handcuff Marier, he resisted and struck the officer in the chest. Martakos says that in response he brought Marier face down to the ground and held him in that position with his knee to get his wrists into the handcuffs. He says that Marier continued to resist until he was handcuffed. When Barbara Marier attempted to get between Martakos and her husband, she was shoved backwards and Officer Syrek told her to "go home, bitch." Once Robert Marier was subdued, the police had him transported to the hospital by ambulance because he was complaining of back pain.

4

Robert Marier was charged with criminal trespass, simple assault, and resisting arrest. Barbara Marier was not arrested or charged. At Robert's arraignment on March 22, 2000, the court released him on $1000 personal recognizance bail for each charge. As bail conditions, the court ordered Marier to be of good behavior, not to enter the Bellemare rental unit or the immediate vicinity for any reason and to comply with particular directions for entering the other rental units on the property, not to have contact with any members of the Bellemare family except through counsel or the police, and to surrender any firearms in his possession. The criminal trespass charge was later dismissed by nolle prosequi. Marier pled nollo contendere to the assault and resisting arrest charges.

In the meantime, late in the evening of March 21, 2000, four Allenstown police officers arrived at the Mariers' home and arrested him for criminal mischief, criminal threatening, and trespass. Those charges arose from a complaint made by Bellemare, with support from his brother, that Marier had threatened Bellemare and thrown a rock through the windshield of a vehicle owned by his brother. The charges were subsequently dismissed.

On April 27, 2000, Robert Marier was arrested again on a complaint filed by Bellemare. The complaint involved an incident

5

between Marier and Bellemare's brother's stepson when the stepson was riding an off-road vehicle on Marier's property. Marier was charged with assault, criminal trespass, and breach of bail conditions. The criminal trespass charge was dismissed by nolle prosequi; the assault charge was filed, and Marier pled nolo contendere to the charge of breaching bail conditions.

On May 2, 2000, another tenant of the garage called Marier about lighting in his bay. Marier went to the garage to make repairs without first notifying the Allenstown police as was required by the conditions of his bail. Officer Martakos saw Marier at the garage talking to one of his tenants. Martakos stopped, radioed dispatch, and approached the tenant's bay where the tenant confirmed that he had called Marier about repairs. Martakos told Marier that his bail conditions required him to first notify the police before going to the garage. Marier got into his pickup truck. Captain Montplaisir arrived in his cruiser. While Martakos stood next to the pickup truck talking to Marier, Marier opened the truck door twice, hitting Martakos's arm with the door each time. Marier then put the truck into reverse, spun the tires as he backed up, and accidentally ran into Martakos's police cruiser. Marier drove home.

Officer Martakos and Captain Montplaisir pursued Marier in their cruisers. Marier did not stop until he reached his

driveway, where he left his truck and ran to the house. Martakos caught up with him on the second floor porch of the house. Martakos says that when he told Marier that he was under arrest and to put his hands behind his back, Marier said he was not going with him. When Martakos grabbed Marier's wrist, Marier began to struggle. Martakos says he sprayed Marier with pepper spray at that point, which allowed him to subdue Marier and put him in handcuffs. The Mariers contend that Martakos sprayed Robert with pepper spray without any provocation. Due to the effects of the pepper spray, Martakos called an ambulance which transported Marier to the police station. Barbara Marier contends that when she tried to comfort her husband at the police station, she was threatened with arrest.

As a result of the May 2, 2000, incident, Marier was charged with resisting arrest, reckless conduct, conduct after an accident, and assault. Marier pled nolo contendere to the charges of assault, reckless conduct, and resisting arrest. The charge of conduct after an accident was dismissed by nolle prosequi.

7

## Discussion

The Mariers bring civil rights claims under § 1983 against Officers Martakos and Syrek, Captain Montplaisir, and the town, alleging violations of the First, Fourth, Fifth, Eighth, and Fourteenth Amendments. They also bring state law claims of assault and battery, negligent infliction of emotional distress, loss of consortium, and malicious prosecution against the individual police officers.[1] The defendants move for summary judgment, and the Mariers object.

## I. Civil Rights Claims

In Count I, the Mariers allege that during the events on March 8, 2000,[2] Officers Martakos and Syrek violated Robert Marier's First Amendment right to express his opinion, his Fourth Amendment right to be free from unlawful seizure of his person, his Fifth Amendment right to due process of law, his Eighth Amendment right to be free from unjustified and excessive force,

---

[1]Although the plaintiffs' statement is somewhat unclear, it appears that they intend to dismiss their claims of assault and battery against Officer Syrek in Counts VII and IX, and their claim of assault and battery against Captain Montplaisir in Count VIII. See Pl. Mem. (doc. no. 20) at 13.

[2]The complaint alleges "March 9, 2000," but the parties appear to agree that the events in question occurred on March 8, 2000, which is also confirmed by the documents submitted by the defendants.

8

and his Fourteenth Amendment right to equal protection by using excessive force against him.  Count II alleges violations of the same constitutional rights by Officer Martakos and Captain Montplaisir with respect to the events that occurred on May 2, 2000.[3]  Count III alleges violations of the same constitutional rights by all of the Allenstown police officers during the period from March through May of 2000 and also alleges that he was "selectively treated" to punish him for exercising his constitutional rights.  Count IV alleges, as to Robert Marier, that the town was deliberately indifferent to the same constitutional rights as asserted in the previous counts in its hiring, supervision, and training of the police force and of Captain Montplaisir and Officers Martakos and Syrek in particular.

In Count V, the plaintiffs allege that Officers Martakos and Syrek violated Barbara Marier's Fourth Amendment right to be free from unlawful seizure of her person, her Fifth and Fourteenth Amendment rights to due process, and her Eighth Amendment right to be free from unjustified and excessive force.  Count VI alleges violations of the same rights, as to Barbara Marier, by

---

[3]Count II adds a due process claim under the Fourteenth Amendment that does not appear in the other counts.

the town in the hiring, supervision, and training of the police force, and in particular of Captain Montplaisir and Officers Martakos and Syrek.

The individual defendants contend that they are protected by qualified immunity. The town contends that the Mariers cannot show municipal liability as required to prove a claim against it under § 1983. The defendants also challenge the Mariers' myriad constitutional claims on the merits. In response, the Mariers do not contest the defendants' motion as to their claims of excessive force under the Eighth Amendment, due process under the Fifth and Fourteenth Amendments (other than possibly a claim of excessive force in violation of substantive due process on behalf of Barbara), and equal protection under the Fourteenth Amendment. Instead, the Mariers focus on their First Amendment claim that the defendants retaliated against Robert to punish him for his criticism of Captain Montplaisir, and their Fourth Amendment claims that Robert was arrested without probable cause on March 8 and May 2, and that Robert and Barbara were subjected to excessive force during the March 8 and May 2 incidents.

Because a qualified immunity analysis begins with consideration of whether a constitutional violation occurred at all, the court will first address the merits of the Mariers' remaining constitutional claims as they are limited by their

10

objection to summary judgment.  See, e.g., Savard v. Rhode Island, 338 F.3d 23, 27 (1st Cir. 2003).

A.   Retaliation against Robert Marier in Violation of the First Amendment

The Mariers contend that the defendants exploited the civil dispute between Bellemare and Robert Marier to punish Marier for his outspoken criticism of Captain Montplaisir.[4]  In order to prevail on his First Amendment claim, Robert Marier must show that the defendants' intent to retaliate against him for protected speech was a substantial factor in motivating the actions taken by the police during his dispute with Bellemare.  Pontarelli v. Stone, 930 F.2d 104, 115 (1st Cir. 1991); accord Collins v. Nuzzo, 244 F.3d 246, 252 (1st Cir. 2001).  If Marier makes that showing, the burden then shifts to the defendants to show that they would have responded to the circumstances of Marier's dispute with Bellemare in the same way even if he had not criticized Montplaisir.  See id.,; see also Nestor Colon Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 41 (1st Cir.

_____

[4]Although the Mariers allege in Counts I, II, III, and IV that Robert Marier's First Amendment rights were violated, the retaliation claim appears to be alleged in Count III.  For purposes of opposing summary judgment, the Mariers have not asserted any other theory of First Amendment violation.

11

1992).

The parties dispute whether the police actions were motivated by retaliatory animus. Marier offers Captain Montplaisir's deposition testimony that shows he was aware of Marier's criticisms, considered Marier's statements to be a violation of New Hampshire law, thought Marier was not credible, and thought that he was excitable. The Mariers point to a remark that Barbara says Montplaisir made to her after Robert was arrested on May 2, that Robert had to be made responsible. Montplaisir, who ordinarily served as the police prosecutor, asked the chief of police to have the Attorney General's office prosecute the charges against Marier.[5] The Mariers also point to the number of arrests related to the Bellemare dispute and challenge the legal bases for the arrests.

The defendants did not address the First Amendment claim in the context of retaliation. In their reply memorandum, the defendants contest the factual bases for the Mariers' claims of retaliation but do not argue for qualified immunity in the retaliation context. As a result, the defendants have not shown

---

[5]The plaintiffs failed to include in their materials submitted in support of their objection to summary judgment the page of Captain Montplaisir's deposition in which they contend that he said he asked to be removed because he thought it was a conflict of interest.

that undisputed facts demonstrate as a matter of law that the Mariers cannot prove their First Amendment retaliation claim or that they are entitled to qualified immunity as to that claim.

B.     Unreasonable Search and Seizure

The defendants contend that their arrests of Robert Marier on March 8 and May 2, 2000, did not violate the Fourth Amendment because probable cause existed to support the arrests and they did not use excessive force.  They also contend that Barbara Marier cannot show a constitutional violation because she has not alleged and cannot show that she was "seized" within the meaning of the Fourth Amendment.  The Mariers oppose summary judgment but provide little guidance as to the constitutional bases for their claims.

1.  Probable cause.

The Mariers assert that the defendants arrested Robert Marier on March 8 and March 21, 2000, without probable cause.[6]  A

_____

[6]Although the Mariers also mention the March 5 "incident" and events on April 27, they do not raise claims based on any arrests that occurred on those dates.  The Mariers do not contend that the May 2 arrest lacked probable cause.  Despite the defendants' protests to the contrary, the circumstances of the March 21, 2000, arrest are sufficiently alleged to be considered under Count III.

13

warrantless arrest must be based on probable cause to satisfy the Fourth Amendment. <u>Valente v. Wallace</u>, 332 F.3d 30, 32 (1st Cir. 2003). Probable cause exists if "the evidence would 'warrant a man of reasonable caution' in believing that a crime has been committed and committed by the person to be arrested.'" <u>Id.</u> (quoting <u>Beck v. Ohio</u>, 379 U.S. 89, 96 (1964)).

The defendants contend that probable cause existed for the March 8 arrest. The defendants do not address the March 21 arrest for purposes of summary judgment. In their reply, the defendants raise a question as to whether Robert Marier's claim based on the March 8 arrest is barred by the <u>Rooker-Feldman</u> doctrine.[7] <u>See</u> <u>District of Columbia Court of Appeals v. Feldman</u>, 460 U.S. 462 (1983); <u>Rooker v. Fidelity Trust Co.</u>, 263 U.S. 413 (1923). Because the application of the <u>Rooker-Feldman</u> doctrine is jurisdictional, the court must address that question first. <u>See</u> <u>Mills v. Harmon Law Offices, P.C.</u>, 2003 WL 22111105, at *4 n.1 (1st Cir. Sept. 12, 2003).

Under the <u>Rooker-Feldman</u> doctrine, lower federal courts lack

---

[7] The defendants do not raise <u>Heck v. Humphrey</u>, 512 U.S. 477 (1994). <u>See, e.g.</u>, <u>id.</u> at 486-87 & n.6; <u>Figueroa v. Rivera</u>, 147 F.3d 77, 80 (1st Cir. 1998). Because the rule in <u>Heck</u> provides only an affirmative defense and is not jurisdictional, the court will not consider its application <u>sua sponte</u>. <u>See</u> <u>Okoro v. Bohman</u>, 164 F.3d 1059, 1061 (7th Cir. 1999).

14

jurisdiction to review state court judgments or to consider claims "that are 'inextricably intertwined' with the claims adjudicated in a state court." Picard v. Members of Employee Ret. Bd., 275 F.3d 139, 145 (1st Cir. 2001); see also In re Middlesex Power Equip., 292 F.3d 61, 66 n.1 (1st Cir. 2002). Claims are inextricably intertwined "if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it." Hill v. Town of Conway, 193 F.3d 33, 39 (1st Cir. 1999). The federal and state actions need not be the same for the Rooker-Feldman doctrine to apply. Mandel v. Town of Orleans, 326 F.3d 267, 271 (1st Cir. 2003).

The Mariers believe that the officers, rather than Robert Marier, were at fault in the March 8 incident that lead to Robert's arrest. Based on their version of events, which is contrary to the officers' statements, probable cause to arrest would not exist. They contend that because the charges brought against Robert for assault and resisting arrest on March 8 are based on the arresting officers' version of events, a material factual dispute exists. The Mariers' theory runs headlong into the Rooker-Feldman doctrine.

After Robert Marier pled nolo contendere to the assault and resisting arrest charges, he was found guilty and convicted of those misdemeanor offenses. As such, he was found guilty of

15

knowingly causing unprivileged physical contact by striking Officer Martakos in the chest and of purposefully interfering with Officers Martakos and Syrek, who he recognized as police officers, when they were trying to arrest him. Robert Marier's convictions on those charges are based on the officers' version of events, that Robert assaulted Officer Martakos and that he resisted Officers Martakos's and Syrek's efforts to arrest him.[8] The Mariers' claim, that those arrests were not supported by probable cause, could only succeed to the extent the convictions were wrong. In other words, if the officers lacked probable cause to arrest Robert Marier for simple assault and resisting arrest, based on their version of events, the misdemeanors of which he was convicted on his nolo plea, based on the same version of events, would be wrong. Therefore, this court lacks jurisdiction to consider the Mariers' claim that Robert was arrested on March 8 without probable cause.[9]

---

[8]"The plain meaning of the term 'convict' is "[t]o find [one] guilty of a criminal charge, either upon a criminal trial, a plea of guilty, or a plea of nolo contendere.' Black's Law Dictionary 301 (5th ed. 1979)." State v. Wonyetye, 129 N.H. 452, 453 (1987).

[9]Because the defendants did not address the March 21 arrest and because those charges were later dismissed, the court does not consider the Fourth Amendment claim in Count III to the extent it is premised on the March 21 arrest under the Rooker-Feldman doctrine.

16

2.  Excessive force.

The Mariers claim that Officer Martakos used excessive force in the course of arresting Robert on March 8 and May 2 and that he used excessive force against Barbara on March 8.[10]  Claims that excessive force was used in effecting an arrest are judged under the reasonableness standard of the Fourth Amendment. Graham v. Connor, 490 U.S. 386, 395 (1989).  Claims of excessive force by the police that do not involve arrest are judged under the Fourteenth Amendment substantive due process standard. Cummings v. McIntire, 271 F.3d 341, 344 (1st Cir. 2001).

a.  Barbara Marier

Barbara Marier was not arrested nor were the officers attempting to arrest her on March 8.  Therefore, her claim is subject to the substantive due process standard.  To succeed, Barbara Marier must prove that the officers' conduct was so extreme as to shock the conscience.  See id. (discussing County of Sacramento v. Lewis, 523 U.S. 833, 843 (1998)).

To be sufficiently extreme to shock the conscience, police conduct "must constitute force that is brutal, inhumane, or

---

[10]Although Captain Montplaisir and Officer Syrek are also named in the excessive force claims in the complaint, the Mariers only pursue claims against Officer Martakos in their objection to summary judgment.

17

vicious." Id. The court must also consider the context of the police conduct because in more exigent circumstances, less deliberation is possible, and more outrageous behavior is tolerable. Id. at 345. When the circumstances fall into the middle spectrum of police activity, the court must consider the need for force, the amount of force needed, the extent of injury, and whether the force was used in good faith for a legitimate purpose or merely for causing harm. Id. (following Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

Barbara Marier's claim is that Officer Martakos shoved her while he was struggling during his efforts to arrest Robert and that Officer Syrek said, "Go home, bitch." As Barbara tells it, when she saw a police officer grab Robert's arms, she tried to get between them, and the officer grabbed her arms and shoved her. Because the officers were indisputedly involved in a struggle with Robert Marier when Barbara attempted to intervene, the context suggests at least a middle level of tenseness.

Barbara does not state that she was injured. She does not indicate that the shove was particularly or unusually ferocious. She also acknowledges that Officer Martakos was struggling with her husband. For all that Barbara Marier offers, it appears that Officer Martakos appropriately shoved her out of the way for the legitimate reason that she was interfering in his efforts to

18

arrest Robert who was resisting.  Under these circumstances, the shove and offensive remark, even as Barbara recounts them, do not rise to the level of conscience-shocking behavior, and therefore do not constitute a constitutional violation.  The defendants are entitled to summary judgment on Count V.

        b.  Robert Marier.

To show that the police used excessive force in violation of the Fourth Amendment, Robert Marier "must demonstrate that the police defendant[s'] actions were not objectively reasonable, viewed in light of the facts and circumstances confronting [them] without regard to [their] underlying intent or motivation." Bastien v. Goddard, 279 F.3d 10, 14 (1st Cir. 2002).  "The relevant circumstances include 'the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight.'" Id. (quoting Graham, 490 U.S. at 396).  The objective reasonableness of the force used is also to be considered in light of the officers' obligation to "to make split-second decisions about the amount of force needed to effect an arrest while operating under tense, dangerous and rapidly-changing circumstances." Gaudreault v. Salem, 923 F.2d 203, 205 (1st Cir. 1990).

19

i. March 8, 2000.

The Mariers recount the events leading to Robert's arrest on March 8, 2000, as follows. In early March, Robert was involved in a dispute with his tenant, Henry Bellemare, concerning the leased garage bay, which had included police intervention. Related to that dispute, Bellemare threatened to break the water pipes in the garage bay.

On March 8, 2000, Bellemare called the Mariers' home to report problems with the furnace flooding in his garage bay. Bellemare asked Barbara to have Robert come down to the garage. Barbara called the Allenstown police to alert them. Robert Marier drove to the garage, found the furnace was undamaged, and turned off the water to prevent further flooding. Officers Martakos and Syrek told Marier to leave, not to return, and that if he returned he would be arrested.

Marier left, but then returned with his wife, each driving separate vehicles. Robert got out of his pickup truck and as he walked toward his wife's car, Officer Syrek yelled to him that they had told him if he returned, he would be arrested. When Robert heard the officer say that he would be arrested, he responded that Bellemare should be arrested for vandalism. As he reached into his wife's car, Officer Martakos pulled Robert's arm

20

from behind. Robert began to struggle. Barbara Marier attempted to intervene to help her husband. In the course of the struggle, Robert was thrown face down on the ground and the officer put his knee into the small of Robert's back, which caused intense pain. Robert was handcuffed and transported to Concord Hospital by ambulance.

Officers Martakos and Syrek add, without dispute by the Mariers, that Martakos told the Mariers to leave and that they refused, that Robert Marier is large and muscular, and that he was agitated, belligerent, and uncooperative. Martakos states that he followed standard procedure in bringing Marier face down on the ground and holding him in that position with his knee while he handcuffed him.

Applying the reasonableness factors, the severity of the crime at issue initially, trespass, is minimal. However, Robert was uncooperative, resisted Officer Martakos's attempt to arrest him, and struggled with Martakos. A reasonable officer in Martakos's position could also have believed that Marier posed a threat to him, to Officer Syrek, and to Bellemare. In addition, the situation was tense and changing due to Marier's failure to heed the officers' warnings and orders. Under these circumstances, the Mariers have not shown that a trialworthy issue exists as to whether force was necessary to subdue Robert

21

Marier under the circumstances, nor have they shown an issue as to the reasonableness of the amount of force used.  See, e.g., Jarrett v. Town of Yarmouth, 331 F.3d 140, 150 (1st Cir. 2003) (holding as a matter law that releasing a police dog to apprehend a fleeing suspect on a bite and hold order, resulting in bite wounds to the suspect, was not excessive force although the suspected offenses were only minor traffic violations).

          ii.  May 2, 2000.

As a result of the March 8 incident, Marier was convicted on his nolo contendere plea to simple assault and resisting arrest. His bail conditions included a requirement that Marier not enter Bellemare's garage bay or the immediate vicinity and that he enter the other bays only to make necessary repairs and only if he first advised the police department of the date and time he was going to make repairs.  On May 2, Marier went to the garage to make repairs without first notifying the police department.

While Marier was at the garage, Officer Martakos and Captain Montplaisir stopped to tell him that he was not supposed to be there without notifying the police first.  Officer Martakos told him he could be arrested.  Marier got into his pickup truck, struck Martakos twice with the door, and then backed into Martakos's police cruiser.  Marier heard Captain Montplaisir yell

22

to Martakos to arrest Marier.

Marier drove home. Officer Martakos and Captain Montplaisir pursued Marier in their cruisers. Once at the Mariers' house, Officer Martakos chased Marier to the second-floor porch and told him he was under arrest. Officer Martakos used pepper spray to subdue Marier. He handcuffed him and took him to the police station.

Marier's actions on May 2 demonstrated his violent potential. In addition, Marier drove away from the scene and resisted the officers' attempts to stop him. Under the circumstances, a reasonable police officer could consider Robert Marier to be dangerous, justifying the use of pepper spray, even if it was not, in fact, necessary. Saucier v. Katz, 533 U.S. 194, 205 (2001) ("If an officer reasonably, but mistakenly, believed that a suspect was likely to fight back, for instance, the officer would be justified in using more force than in fact was needed."); see also McCormick v. City of Fort Lauderdale, 333 F.3d 1234, 1245 (11th Cir. 2003) (discussing police use of pepper spray). Therefore, the Mariers have not shown a trialworthy issue as to whether using pepper spray was an unreasonable use of force.

23

### iii. Qualified immunity.

Even if the force used on either occasion had been unconstitutionally excessive, Officer Martakos would nevertheless be entitled to qualified immunity, on this record, because "reasonable mistakes [could] be made as to the legal constraints" on the police conduct involved. Saucier, 533 U.S. at 205. The Mariers do not suggest that the law applicable to excessive force in the contexts they claim was clearly established. Cf. McCormick, 333 F.3d at 1245 (pepper spray); Jones v. Buchanan, 325 F.3d 520, 534 (4th Cir. 2003) (pepper spray and other conduct); Jones by Jones v. Webb, 45 F.3d 178, 184 (7th Cir. 1995) (knee in back restraint); Adams v. Metiva, 31 F.3d 375, 387 (6th Cir. 1994) (pepper spray); Johnson v. Wolgemuth, 257 F. Supp. 2d 1013, 1032 (S.D. Ohio 2003) (pepper spray); Lawyer v. City of Council Bluffs, 240 F. Supp. 2d 941, 954 (S.D. Iowa 2002) (pepper spray); Bell v. Dawson, 144 F. Supp. 2d 454, 462 (W.D.N.C. 2001) (knee in back and other restraint; Stachel v. City of Cape Canaveral, 51 F. Supp. 2d 1326, 1331 (M.D. Fla. 1999) (knee in back restraint); Price v. County of San Diego, 990 F. Supp. 1230, 1249 (S.D. Cal. 1998) (knee in back restraint). It appears that the law is not clearly established, as demonstrated by the cases cited above, with respect to the constitutionally permissible use of force in circumstances

24

similar to those presented here.  Therefore, qualified immunity would also support summary judgment in favor of Martakos, even if a constitutional violation had occurred.  See Saucier, 533 U.S. at 205-06.

C.   Municipal Liability

In Counts IV and VI, the Mariers claim that Allenstown violated their constitutional rights due to the hiring, supervision, and training of the police force.  They have not pursued those claims in opposition to summary judgment, however.  Instead, they contend that the town is liable, because the police department, including the chief, was aware of Captain Montplaisir's lack of objectivity as to the Mariers but "permitted the acts set forth in the Plaintiff's [sic] Affidavits."  Although far from clear, it appears that the Mariers intend to assert a claim that the town violated Robert Marier's First Amendment rights by allowing Captain Montplaisir to involve the Allenstown police in the Mariers' dispute with Bellemare for the purpose of retaliating against Robert for his outspoken criticism of Montplaisir.

A town is liable under § 1983 "only if (1) a constitutional harm occurred, and (2) the harm was caused by the execution of a government's policy or custom."  Rosenberg v. City of Everett,

25

328 F.3d 12, 17 (1st Cir. 2003) (internal quotation marks omitted).  Implementation or enforcement of the municipal policy or custom must be "the moving force of a violation of federally protected rights."  Burrell v. Hampshire County, 307 F.3d 1, 10 (1st Cir. 2002).  A custom or policy may be established by the decision of a municipal policymaker who possesses authority to establish such policy.  Kelley v. Laforce, 288 F.3d 1, 9 (1st Cir. 2002).

In their motion and memorandum, the defendants presented the requirements of municipal liability and argued that the Mariers could not show that any of their claimed constitutional violations occurred due to a custom or policy adopted by Allenstown.  In response, the Mariers have not addressed the legal requirements for municipal liability under § 1983 or offered any evidence or even an argument that the town acquiesced in Captain's Montplaisir's alleged retaliation or that the town was following a custom or policy in doing so.  As such, the Mariers' response is insufficient to avoid summary judgment on their municipal liability claims.  See Higgins v. New Balance Athletic Shoe, Inc., 194 F.3d 252, 260 (1st Cir. 1999).

D.    State Law Claims

The defendants move for summary judgment on the state law claims.  In addition to agreeing to dismiss some of the assault and battery claims, the Mariers concede that they lack evidence to support their negligent infliction of emotion distress claim.  As to the remaining state law claims, the Mariers contend only generally that the evidence supporting their § 1983 claims for unreasonable search and seizure and excessive force also supports their state law claims.

1.   Malicious prosecution.

As the defendants point out, "[t]o prevail upon a claim of malicious prosecution, a plaintiff must prove that he was subjected to a criminal prosecution instituted by the defendant without probable asue and with malice, and that the criminal proceeding terminated in his favor."  Robinson v. Fimbel Door Co., 113 N.H. 348, 350 (1973); accord ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993).  Some of the proceedings against Robert Marier were not prosecuted; some were dismissed by nolle prosequi; but many resulted in convictions that were not appealed.  Marier cannot recover on a malicious prosecution claim arising from proceedings that did not terminate in his favor. See Robinson, 113 N.H. at 350-51 (discussing favorable

termination element).

The Mariers have not explained which proceedings give rise to their malicious prosecution claim nor have they acknowledged the legal requirements of a malicious prosecution claim. Given the Mariers' lack of response on this issue and the defendants' properly supported motion, the defendants are entitled to summary judgment on the claim of malicious prosecution, Count XIII.

### 2. Assault and battery.

In Counts VII and VIII, Robert Marier brings claims of assault and battery against Officer Martakos arising from the circumstances of his arrests on March 8 and May 2, 2000. In Count IX, Barbara Marier brings an assault and battery claim against Officer Martakos based on the March 8 incident. The defendants contend that the Mariers cannot maintain their assault and battery claims as a matter of law because Officer Martakos's actions were justified.

To prove assault, a plaintiff must show that the defendant intended to cause harmful or offensive contact with the plaintiff and that the defendant put the plaintiff "in imminent apprehension of such contact." Yale v. Town of Allenstown, 969 F. Supp. 798, 801 (D.N.H. 1997). Battery is the act which is the legal cause of assault. Tupick v. Town of Gorham, 1994 WL

28

575608, *7 (D.N.H. Oct. 13, 1994). By statute, however, a police officer is justified in using non-deadly force that is reasonably necessary to make an arrest or to defend himself against the use of non-deadly force while making an arrest. RSA 627:5, I. Further, "[n]o person shall incur any civil liability to another person by taking any action against such person which would constitute justification pursuant to RSA 627." RSA 507:8-d.

Because the Mariers have not shown a triable issue as to whether Officer Martakos used reasonable force against them, and was therefore justified in his actions pursuant to RSA 627:5, I, they cannot maintain their assault and battery claims due to the bar imposed by RSA 507:8-d. The defendants are entitled to summary judgment as to Counts VII, VIII, and IX.

### 3. Loss of Consortium.

Because the defendants are entitled to summary judgment as to all of Barbara Marier's federal and state tort claims, the defendants are entitled to summary judgment as to Robert Marier's derivative loss of consortium claim in Count XII. See RSA 507:8-a. The defendants are also entitled to summary judgment as to all of Robert Marier's state tort claims. "[T]he spouse of an alleged federal civil rights victim is not permitted an ancillary cause of action for loss of consortium." Miller v. CBC Cos., 908

29

F. Supp. 1054, 1069 (D.N.H. 1995). Therefore, Robert Marier's loss of consortium claim in Count XII is also resolved in favor of the defendants.

## Conclusion

For the foregoing reasons, the defendants' motion for summary judgment (document no. 13) is granted as to the following of the plaintiffs' claims and is otherwise denied:

All claims in Counts I, II, IV, V, VI, VII, VIII, IX, X, XI, XII, and XIII;

Any claim in Count III, that Robert Marier was arrested on March 8 in the absence of probable cause;

Any claim in Count III that the defendants used excessive force in arresting Robert Marier, and

Any claim in Count III under the Fifth, Eighth, or Fourteenth Amendments.

The claims that remain are:

Count III: Robert Marier's First Amendment retaliation claim and Fourth Amendment claim that his arrest on March 21 lacked probable cause.

The complaint in this case demonstrates well why scattershot pleading is disfavored and counterproductive.

The parties are placed on notice that the court will require them to mediate this case before it proceeds to trial.

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
United States District Judge

October 8, 2003

cc:  H. Jonathan Meyer, Esquire
     Charles P. Bauer, Esquire